Office of the Secretary of State
Building 1 Suite 157-K
1900 Kanawha Blvd E
Charleston, WV 25305



9171 9237 9000 1000 8350 96



**Natalie E. Tennant**
Secretary of State
Telephone: 304-558-6000
Toll Free: 866-SOS-VOTE
www.wvsos.com

| | |
|---|---|
| ControlNumber: | 352705 |
| Defendant: | T.D. AMERITRADE |
| | |
| County: | 27 |
| | 2/13/2013 |
| Civil Action: | 13-C-333 |

T.D. AMERITRADE
PO BOX 2209
OMAHA NE 68103-2209

I am enclosing:

| | | |
|---|---|---|
| _____ summons | _____ affidavit | __1__ summons and complaint |
| _____ notice | _____ answer | _____ summons and verified complaint |
| _____ order | _____ cross-claim | _____ summons and amended complaint |
| _____ petition | _____ counterclaim | _____ 3rd party summons and complaint |
| _____ motion | _____ request | _____ notice of materialmans lien |
| _____ suggestions | _____ notice to redeem | _____ notice of mechanic's lien |
| _____ interrogatories | _____ request for production | _____ re-issue summons and complaint |
| _____ discovery | _____ request for admissions | _____ subpoena duces tecum |
| _____ suggestee execution | _____ notice of uim claim | _____ Other |
| _____ subpoena | _____ writ | |
| _____ stipulation | _____ writ of mandamus | |

which was served on the Secretary at the State Capitol as your statutory attorney-in-fact. According to law, I have accepted service of process in your name and on your behalf.

*Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of process in your name and on behalf as your attorney-in-fact. Please address any questions about this document directly to the court or the plaintiff's attorney, shown in the enclosed paper, **not to the Secretary of State's office.***

*Sincerely,*

Natalie E. Tennant
Secretary of State

EXHIBIT

1

IN THE MAGISTRATE COURT OF _____MERCER_____ COUNTY, WEST VIRGINIA

Plaintiff's name & address:

**BRIAN BLANKENSHIP**

**882 OAKLAND DR**

**PRINCETON WV 24740**

v.

Defendant's name & address:

**T.D. AMERITRADE**

Name & address of plaintiff's attorney, if applicable:

Case No.   13C-333

RECEIVED

FEB 0 8 2013

Magistrate Court of Mercer Co.

# CIVIL SUMMONS

In the name of the State of West Virginia, T.D. AMERITRADE

as a defendant named in the above-styled civil action, you are hereby summoned to appear before or make answer to the _____MERCER_____ County Magistrate Court at 120 SCOTT ST PCTN WV 24740, MAG R FOWLER within __20__ days from the date you receive service of this summons.   If you fail to appear or otherwise answer, judgment by default may be taken against you for the relief demanded in the complaint.

_Donna Arnold MRS_

Magistrate Court Clerk *(sign and affix court seal)*

2/8/13

Date

**NOTICE:** Any party in a civil action seeking over $20.00 or possession of real estate has the right to elect that the case be tried by a jury. You must give written notice to the magistrate court either 20 days from when the first timely answer to the complaint is made or 5 days from when service of the summons and complaint is made for unlawful entry or detainer actions.   If you do not notify the magistrate court within the appropriate time period, you give up your right to a jury trial.   The jury fee will be assessed against the losing party if the case is tried by a jury or may be prorated between the parties if the case is settled before trial.

(OPTIONAL) NOTICE OF ELECTION:  As defendant in the above action, I wish to have a jury trial.

_____     _____
Signature                                                              Date

**NOTICE:**  Any person involved in court proceedings who has a disability and needs special accommodation should inform the court sufficiently in advance so that arrangements can be made if possible.

## SERVICE OF PROCESS
*(To be completed ONLY by a process server when the method of service is personal service.)*

**METHOD OF SERVICE** *(check one):* A. ☐ Defendant was served in person. B. ☐ Defendant was not found. C. ☐ Substituted personal service; the defendant was not found at his/her usual place of abode, so a copy of the summons and complaint was delivered and the purpose explained to _____, who is a member of the defendant's family above the age of 16.

Service was completed on the _____ day of _____ by delivery of a true written copy of the Summons together with the Complaint by *(check one):*

A. ☐ Certified Mail

B. ☐ Sheriff's Process Server _____ Signature _____
                                                     Name *(print)*

C. ☐ Private Process Server/Credible Person _____
                                                                            Name and Address *(print)*

I received $_____ from the plaintiff for serving the within summons on the defendant.

Signature of Private Process Server _____ Date _____

STATE OF WEST VIRGINIA, COUNTY OF _____, to-wit:

The foregoing instrument was taken, subscribed and sworn to or affirmed and acknowledged before me this _____ day of_____.

Magistrate Court Personnel or Notary Signature _____. If notary, date commission expires:_____

W.Va. Code §§ 50-4-5, 50-4-10, 50-5-8(a); Mag.Ct.Civ.Rules 3, 10; Cir.Ct.Civ.I Rule 4

SCA-M220NP/ 10-00

Docket Code(s): MMFSI

Copy Distribution:   ☐ Return
                                    ☐ Defendant
                                    ☐ File
                                    ☐ Plaintiff

Secretary of State

IN THE MAGISTRATE COURT OF *Mercer* COUNTY, WEST VIRGINIA

Name, Address & Phone Number of Plaintiff:

Brian Blankenship
882 Oakland Dr
Princeton, WV 24739
304-425-9350

Case No. 13 C-333

v.

Name, Address & Phone Number of Defendant

TD Ameritrade
PO Box 2209
Omaha, NE 68103-2209
800-669-3900

--- fold here ---                                              --- fold here ---

## CIVIL COMPLAINT

The above-named plaintiff or *Brian Blankenship*, on behalf of the plaintiff acting in the capacity of _____, alleges the following as true and accurate *[give a clear and simple statement of the claim against the defendant(s)]*: On 8-17, 8-24 & 8-25 of 2005 I purchased 170,000 shares of Bancorp International Group Inc (BCIT) through my broker TDAmeritrade. In total I paid $1,942.97 Since September 2011 I made several requests for my certificates and it was and requests the following relief from the court: refused. I requested a refund as well and they also refused as the defendant stated my trades were good and valid and that the shares were in my account. I have made further requests for my certificates and they have been refused. I want my certificates to be delivered to me.

_____
Signature

2-8-13
Date

NOTICE:  Any party in a civil action seeking over $20.00 or possession of real estate has the right to elect that the case be tried by a jury.  You must give <u>written</u> notice to the magistrate court either 20 days from when the first timely answer to the complaint is made or 5 days from when service of the summons and complaint is made for unlawful entry and detainer actions.  If you do not notify the magistrate court within the appropriate time period, you give up your right to a jury trial.  The jury fee will be assessed against the losing party if the case is tried by a jury or may be prorated between the parties if the case is settled before trial.

<u>(OPTIONAL)</u> NOTICE OF ELECTION:
As plaintiff in the above action, I wish to have a jury trial.

_____
Signature

_____
Date

NOTICE:  Any person involved in court proceedings who has a disability and needs special accommodations should inform the court sufficiently in advance so that arrangements can be made if possible.

W. Va. Code §§ 50-4-1, 50-5-8(a); Mag. Ct. Civ. Rules 2, 6A

SCA-M207 / 10-94
Docket Code(s): (SMCIC1 | SMCIC2 | SMCIC3 | SMCIC4) & MCSDA

☐ Return
☐ Defendant
☐ File
☐ Plaintiff

IN THE MAGISTRATE COURT OF MERCER COUNTY, WEST VIRGINIA

BRIAN BLANKENSHIP,

      Plaintiff,

vs.                                            CASE NO. 13-C-333

T.D. AMERITRADE, INC.,

      Defendant.

## DEFENDANT T.D. AMERITRADE, INC.'S
## MOTION FOR A MORE DEFINITE STATEMENT

      Defendant T.D. Ameritrade, Inc. ("TDA"), by counsel, moves for an order requiring Plaintiff, Brian Blankenship, to file a more definite statement so that TDA may reasonably be able to prepare a responsive pleading to Mr. Blankenship's Complaint.  In support of this Motion, TDA states as follows:

### FACTS

      On February 8, 2013, Mr. Blankenship filed his Complaint, which was served on TDA through the West Virginia Secretary of State's Office on February 13, 2012.  In the Complaint, Mr. Blankenship alleges that he purchased 1700 shares of Bancorp International Group ("BCIT") stock in August 2005 through TDA for a total of $1,942.97.  Mr. Blankenship alleges that, beginning in September 2011, he made several requests to TDA to receive hard copy certificates of his BCIT stock shares.  The Complaint alleges that these requests were denied.  Mr. Blankenship further claims that his stock shares were "good and valid" and that he wants his "certificates to be delivered." See Complaint.

### ARGUMENT

Magistrate Court is governed by the Rules of Civil Procedure for Magistrate Court. According to R. Civ. P. Mag. Ct. 2, "[a] complaint shall contain: (a) A short and plain statement of the claim showing that the plaintiff is entitled to relief; and (b) A demand for judgment for the relief the plaintiff seeks."  Although Mr. Blankenship makes a demand for relief, stating "I want my certificates to be delivered to me," he completely fails to state any factual or legal grounds for his requested relief, and fails to even allege any legally cognizable cause of action against TDA.

Specifically, Mr. Blankenship's Complaint states only that he purchased BCIT stock in August 2005 and that he was not able to certificate his stock in 2011 upon his request.  It is wholly unclear from the Complaint, however, what Mr. Blankenship's legal claim actually is, when his claim arose, exactly what conduct or actions (or inactions) of TDA allegedly supports his claim, or what his legal claim or theory for recovery might be.  In fact, his Complaint represents nothing more than a request for relief without any basis, factual or legal, as to why or how he is legally entitled to that relief.  Accordingly, Mr. Blankenship has failed to provide a "short and plain statement of [his] claim showing that [he] is entitled to relief[,]" as is required by R. Civ. P. Mag. Ct. 2.

TDA does not ask the Court, at this point, to throw out Mr. Blankenship's claim entirely; however, TDA does ask that this Court require him to make a more definite statement of the factual and legal bases for his claim.  Although not directly controlling in Magistrate Court, West Virginia Rule of Civil Procedure 12(e) allows a party to move for a more definite statement: "If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading. The motion shall point out the

2

defects complained of and the details desired." Here, Mr. Blankenship's Complaint is "so vague and ambiguous" that TDA cannot be expected to reasonable file a responsive pleading.

Using W. Va. R. Civ. P. 12(e) as a guide, the defects of Mr. Blankenship's Complaint become clear. For example, it is unclear if Mr. Blankenship's claim allegedly results from a statute being violated or a contract being breached. It is unclear whether the nebulous, implied harm asserted by Mr. Blankenship stems from the purchase of his shares in BCIT in August 2005, when he alleges his shares were purchased, or from some other entirely different time. There is no clear indication of any action taken by (or inaction by) TDA that allegedly directly caused the general harm implied in the Complaint. In short, in order to reasonably prepare and file a pleading that is responsive to Mr. Blankenship's Complaint, TDA must know what actions allegedly caused what harm, when the alleged actions and subsequent harm occurred, and what the legal basis might be for the yet-to-be identified claims.

## CONCLUSION

For the foregoing reasons, TDA requests that this Court order Mr. Blankenship to file a more definite statement of his claims so that TDA might reasonably be able to prepare a responsive pleading.

_____
Mychal S. Schulz (WVSB #6092)
Katherine M. Santmyer (WVSB #12059)
DINSMORE & SHOHL LLP
P.O. Box 11887
Charleston, West Virginia 25339
(304) 357-0900; (304) 357-0919 fax
*Counsel for T.D. Ameritrade, Inc*

IN THE MAGISTRATE COURT OF MERCER COUNTY, WEST VIRGINIA

BRIAN BLANKENSHIP,

      Plaintiff,

vs.                                                CASE NO. 13-C-333

T.D. AMERITRADE, Inc.,

      Defendant.

## CERTIFICATE OF SERVICE

This is to certify that a true and accurate copy of **Defendant T.D. Ameritrade's Motion for a More Definite Statement** was served via U.S. Mail, postage prepaid, this 13th day of March, 2013, upon the following:

Brian Blankenship
882 Oakland Dr.
Princeton, WV 24739
*Plaintiff*

_____
Mychal S. Schulz (WV Bar No. 6092)

284041v1
3/13/2013

IN THE MAGISTRATE COURT OF MERCER COUNTY, WEST VIRGINIA

**BRIAN BLANKENSHIP**

Plaintiff

vs                                                    CASE NO 13-C-333

**TD Ameritrade, INC**

Defendant

## PLAINTIFFS RESPONSE TO DEFENDANTS MOTION FOR A MORE DEFINITE STATEMENT

Plaintiff Brian Blankenship ("Plaintiff and/or "I" "me" "Mine" "my") responds to the motion submitted by the defendant TD Ameritrade inc ( "Defendant" "and/or "Ameritrade","TDA", "they") through its legal counsel that I have failed to state any factual or legal grounds for my requested relief and that I fail to allege any legal cognizable cause of action against TD Ameritrade .

My statement filed with the small claims court was done on the correct form which only allows a claimant to give the brief facts, and although succinct the statement of claim contained all the pertinent details relating to this case.

The defendant's allegation that my claim is so vague and ambiguous that they cannot be expected to reasonably file a responsive pleading is misleading and untrue and I submit that the motion amounts to a bad faith filing.

The defendant and I have exchanged numerous communications on this matter and they are defending identical cases in courts across the United States.  Furthermore, on January 2, 2013 The Financial Investment Regulatory Authority (FINRA) ordered to deliver a certificate for Bancorp shares, so for them to say they don't know what this is all about is simply not true.   Furthermore, the defendants were served on February 25, 2013 yet only responded on March 13, 2013.

The defendants are a sophisticated brokerage firm with its own in house attorneys and have not responded to the filing in a timely manner and their claims that they cannot possibly file a responsive pleading are un-substantive and are simply a time wasting exercise and thus an abuse of process.

## I.   RELIEF REQUESTED

The Defendant, TD Ameritrade, Inc. has refused to deliver a share certificate representing my ownership of 170,000 shares in Bancorp International Group Inc. (BCIT) and I request the court to compel the defendant to deliver this certificate in accordance with UCC 8-508, UCC2-401, SEC Rule 15c3-3, Nevada Revised Statute 78.235 and FINRA Rule 11870.

## II.   BRIEF FACTS

**A     CIRCUMSTANCES LEADING TO COURT ACTION**

Defendant TD Ameritrade Inc. is a brokerage firm and I am a customer of said Defendant. All securities transactions in my brokerage account are subject to compliance with Uniform Commercial Code, as well as Federal & State Securities laws.

On or about August 17, August 24, & August 25, 2005 I directed the Defendant to purchase 170,000 shares of Bancorp International Group Inc. (BCIT) in my TD Ameritrade account (See Attachment 1). Defendant removed funds $1,942.97 from my account and created 'security entitlements' for 170,000 shares of Bancorp International Group Inc (BCIT) and issued a trade confirmation notices pursuant to section 10b-10 Securities Exchange Act 1934, and there is no complaint or issue about the transactions in 2005. **Attachment 1**

The conduct I am complaining of started in September 2011 when I requested TD Ameritrade to deliver a certificate representing the 100,000 BCIT shares they held in my account and they refused as well as denying me a full refund for the remaining 3 trades. **Attachment 2**

The defendants said they were unable to deliver due to a "global lock" on BCIT stock by the Depository Trust & Clearing Corporation (DTCC) which is not true. **Attachment 3**

*On March 27, 2013 I asked the defendants to confirm the details of the seller of my shares as they are required to do under section 10b-10 Securities Exchange Act 1934, but they failed to respond.*

As TD Ameritrade has refused to deliver the property I bought and despite my best efforts, they have refused to resolve this, I have no option but to seek legal remedy by suit or action by law. **Attachment 4**

**B      BCIT STOCK & THE DTCC "global lock"**

The Defendants excuse for not delivering my certificate is that they are prohibited from doing so because of the DTCC global lock and I can prove this is not correct and to do this it will help the court if I explain why the history of BCIT, its stock, the global lock and why it is not relevant or a valid excuse for non performance.

As the Securities Exchange Commission (SEC) claimed in Litigation Release No. 20466 Bancorp International Group, Inc., BCIT, (the "Company"), was a victim of corporate identity theft in 2005. Between May and August 2005, it is alleged that 41 unauthorised stock certificates representing approximately 245,000,000 shares allegedly entered the market place. **Attachment 5**

The Company contacted The Depository Trust & Clearing Corporation (DTCC) issued a special notice to all its participants (including the Defendants) suspended all their clearing services relating to BCIT stock on the cusip 05968x106 on August 16, 2005 effective August 11, 2005. **Attachment 6**

Many brokers such as the defendant continued to publicly trade despite the lock and to have done this they and their sellers should have been using physical share certificates.

DTCC is a bit like a bank, in that it holds shares in their depository (Cede & Co) and they move them to and from their participants (brokers) accounts as they are bought and sold. When there is a lock the shares stay on deposit or in custody but DTCC will not let them in or out be it electronically or physically.

Trades before August 11, 2005 (pre lock) were cleared through DTCC but trades after that date (post lock) were done without DTCC.

As I said, it is a bit like having a bank account that has been frozen. The money that is there stays there, it does not vanish but you cannot put any money in or take money out and you certainly can't make electronic payments, withdrawals, or deposits. Of course that does not mean you cannot use cash money from somewhere else, it just means you cannot use the money in that account, so where as you might normally pay for things by making transfers, checks or using your card linked to your account you can't because it is locked so you would have to do everything by cash. This is just how the DTCC lock works on shares.

It is important to stress that DTCC do not sell shares, they only process and clear the transactions with transfer of shares held in their depository.

On August 31, 2005, the SEC announced a temporary suspension of trading in the company's shares from 9:30 a.m. on August 31, 2005, and terminating at 11:59 p.m. on September 14, 2005. **Attachment 7**

The purpose of this "Halt" was to allow reporting institutions such as DTCC and the Defendants to locate, identify and surrender any "unauthorised" or "fake" BCIT shares in their possession and surrender them within one working day to the SEC and FBI as is specified under section 17f-1 of the Securities Exchange Act.

> **Every reporting institution shall report the discovery of any counterfeit securities certificate to the Commission or its designee, to a registered transfer agent for the issue, and to the Federal Bureau of Investigation within one business day of such discovery.**

On Friday January 6, 2006, the District Court of Oklahoma issued a court order to allow the company to issue new shares under Section 3(a)(10) of the Security Exchange act of 1934, which would be exchanged for the 245,000,000 (approx.) unauthorised shares as identified by the SEC as being in the market place **Case No. CJ-2005-7459.**

On January 6, 2006, in order to comply with the court order BCIT filed an amendment with the Secretary of State of Nevada altering the capital of the company as a result which on Monday January 9, 2006, Standard and Poors Global Cusip services issued a new cusip number 05968X205 to the company and rendered the former cusip 05968X106 inactive. **Attachment 8**

The court should note that Standard & Poors Global Cusip services confirm that the current active cusip for Bancorp International Group Inc is 05968X205. **Attachment 9**

Two share certificates were issued by Bancorp International Group on the new cusip 05968X205.

1. One to Capital Growth for 219,723,000.
2. The other certificate was issued to JH Darbie for 25,025,000.

That in effect took care of the issue involving the "fake" or "unauthorised shares" and in a recent Press release the CEO & president of BCIT confirmed that no such shares have been located, identified and surrendered to the SEC or FBI since then. **Attachment 10**

## III ARGUMENT

This complaint shows that the plaintiff has a right of action and contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." It is supported by fact, stated cases, and statute.

**A      Plaintiff Has A Right of Action and The claim to relief is plausible on its face.**

**(i)      Right Of Action**

It is a general and indisputable rule, that where there is a legal right, there is also a legal remedy by suit or action at law whenever that right is invaded. I have demonstrated a legal right and shown that this right has been invaded. I have given several examples of authorities in previous filings which supports my request for legal remedy by suit or action at law, and the following serve to reinforce that right even further and the following cases support my right to take action in the court.

_Bell v. Hood, 327 U. S. 678, 684 (1946)._ "Where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make "good the wrong done."

_Bank of Commerce v. Rutland & W. R. Co., 10 How. Prac. (N. Y.) 1_ Cause of action is not synonymous with chose in action; the latter includes debts, etc., not due, and even stocks.

_2 Bl. Comm. 3S9, 397; 1 Chit. Pr. 99_ A right to personal things of which the owner has not the possession, but merely a right of action for their possession.

_Hibbard v. Clark, 56 N. H. 155, 22 Am. Rep. 442_ The right to bring suit; a legal right to maintain an action, growing out of a given transaction or state of facts and based thereon.

_Deitrick v. Greaney, 309 U. S. 190, 201 (1940)._ "It is for the federal courts to adjust their remedies so as to grant the necessary relief where federally secured rights are invaded."

**(ii)      The claim to relief is plausible on its face**

The plaintiff produces the following factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged and It cannot be disputed that statutes give me a right of ownership and physical possession of shares.

<u>Uniform Commercial Code § 8-501(b)</u> states that the moment I paid for those shares and TD Ameritrade showed them in my brokerage account, those shares became mine.

**A person acquires a security entitlement if a securities intermediary indicates by book entry that a financial asset has been credited to the person's securities account.**

<u>Uniform Commercial Code § 8-508</u> states that how I hold my shares is my choice and that the broker is obligated to change my shares into another available form when I request it.

**A securities intermediary shall act at the direction of an entitlement holder to change a security entitlement into another available form of holding for which the entitlement holder is eligible, or to cause the financial asset to be transferred to a securities account of the entitlement holder with another securities intermediary.**

Bancorp International Group Inc is a Nevada registered company and I am also entitled to a certificate under <u>Nevada Revised Statues 78.235</u> which states:

**Every stockholder is entitled to have a certificate, signed by officers or agents designated by the corporation for the purpose, certifying the number of shares in the corporation owned by the stockholder.**

<u>Section 15c3-3(l) Securities Exchange Act 1934</u> is very clear that I have an absolute right to certificate delivery.

**Nothing stated in this section shall be construed as affecting the absolute right of a customer of a broker or dealer to receive in the course of normal business operations following demand made on the broker or dealer, the physical delivery of certificates for Fully-paid securities to which he is entitled.**

As I said earlier, the seller owes me shares and the respondents knowingly and voluntarily agreed to guarantee the sellers performance when they sent me the trade confirmation. The responsibility of Defendant to obtain possession or control of securities and their obligation to deliver a certificate are "substantive obligations" imposed by the rules and regulations and <u>Section 15c3-3 (b)(1) Securities Exchange Act 1934</u> which states that:

**A broker or dealer shall promptly obtain and shall thereafter maintain the physical possession or control of all fully-paid securities and excess margin securities carried by a broker or dealer for the account of customers.**

By not getting the seller to perform, the defendants are in breach of this section and their performance is not completed until physical possession is delivered to me.

Compliance with Security Laws is mandatory and not discretionary. The Defendant states the trades are good but yet is willfully refusing to comply with Section 15c3-3 obligations to obtain and deliver to me a Bancorp International Group Inc. certificate or refund my money.

<u>Section 29(a) of the Securities Exchange Act Of 1934</u> states that:

> **Any condition, stipulation, or provision binding any person to waive compliance with any provision of this title or of any rule or regulation thereunder, or of any rule of a self-regulatory organization, shall be void.**

The defendants agree they took my money and apparently bought the BCIT shares but will not give them to me because of the "global lock" which is just not true. I submit that this amounts to Embezzlement because the defendants are dishonestly withholding assets for the purpose of conversion of such assets by one or more individuals to whom such assets have been entrusted, to be held and/or used for other purposes. The conversion element of the offence requires a substantial interference with the true owner's property rights. I want a certificate and to be a holder of records and be registered on the books of BCIT and the defendants actions are preventing that.

**B      The DTCC Lock Is Not A Valid Excuse For Defendants Non Delivery**

Very simply it does not make any sense because I bought the bulk of my stock on August 17, 24, 25th, 2005 so after the effective date of the lock "post lock" and so DTCC had no part in the process at all.

1.  DTCC is not the seller of shares so they did not sell them to me.
2.  It has nothing to do with DTCC as they had suspended these services.

*<u>The DTCC does not buy or sell shares, they only clear them</u>*. When TD Ameritrade sells shares to a customer they do not and cannot buy them from DTCC, they have to buy them from another broker or institution to cover their position and that transaction. NORMALLY, ie pre lock, these are cleared through the DTCC. For example, let's say that TD Ameritrade buys from "A" and "A" may have bought shares from "B" and so on, but eventually, you come to the end of the chain, ie the Entity, who actually has certificates on deposit with the DTCC.

Post lock this chain does not exist as the trades were broker to broker and because the shares were not being cleared through DTCC, so the seller "A" should have delivered a certificate so that TD Ameritrade would have ended up with a physical certificate to cover the shares they sold to me and others.

_It has nothing to do with DTCC as they had suspended these services._ The Defendants traded despite the lock and without access to the shares at the DTCC and DTCC told their participants such as the defendants that:

> "**DTC shall bear no responsibility for any losses associated with the failure of participants or other authorized users to follow DTC's most current Service Guides and/or important Notices.**
>
> **In connection with their use of the Corporation's services, Participants and Pledgees must comply with all applicable laws, including all applicable laws relating to securities.**"

## C     Failure To Perform

Logically this inability or refusal to deliver the certificate has nothing to do with the DTCC or the "global lock" as they played no part in this transaction, it is much simpler than that, TD Ameritrade are unable to deliver to me because somebody else failed to deliver the certificate to them. That is not my problem, it is TD Ameritrade's because they guaranteed delivery and the sellers performance when they sent me my trade confirmation under rule 10b-10 Securities Exchange Act 1934.

The seller must perform and deliver and their responsibilities to me are not done until physical delivery is complete.

UCC § 2-401. Passing of Title; Reservation for Security;

**"The seller completes his performance with reference to the physical delivery of the goods."**

If TD Ameritrade cannot get the seller to perform then they are obliged by law to get the shares from somewhere else and then seek redress with the seller who is in default later. The responsibility of Defendant to obtain possession or control of securities and their obligation to deliver a certificate are "substantive obligations" imposed by UCC 8 and Section 15c3-3 (b)(1) Securities Exchange Act 1934 which states that:

**A broker or dealer shall promptly obtain and shall thereafter maintain the physical possession or control of all fully-paid securities and excess margin securities carried by a broker or dealer for the account of customers.**

I don't know who the seller was as the Defendant have refused to respond to a request under Rule 10b-10 of the Security Exchange Act 1934, "The trade confirmation rule" which requires broker-dealers to confirm the identity, quantity, and price of securities obtained on behalf of customers.

**D**      **The Defendant Knows that BCIT Share Certificates Are Available For Delivery**

BCIT Share Certificates are available as the defendant is a shareholder of record in BCIT and was delivered a certificate in March 2012.  **Attachment 11**

The court should also be aware that in January 2013, TD Ameritrade was ordered by a FINRA arbitrator to deliver a certificate to another BCIT beneficial shareholder.  The claimant in that case had actually bought 25,000 on August 25, 2005 and had also been denied a certificate and refund by TD Ameritrade. **Attachment 12**

Dr Timothy Colby who bought BCIT shares post lock in August 2005 through another broker was provided with certificates in February 2013 by his broker, and very simply, if they can deliver shares for a "post lock trade" then so can TD Ameritrade  **Attachment 13**

Having been denied my certificate and a refund by the defendant I ask the court to compel Defendant to obtain and deliver to me the BCIT physical certificate I am entitled to.

**E**      **Plaintiffs Brokerage Agreement with the Defendant.**

There is a binding arbitration clause in my brokerage agreement under which both parties agree to take disputes to FINRA Arbitration and Under section 2 of the <u>Federal Arbitration Act, 9 USC,</u> the only way to challenge the validity of the arbitration agreement is to argue that arbitration is not a valid process for resolving the particular claims at issue.

This matter is before the court as it is not suitable to be referred to FINRA as they must be disqualified due to a conflict of interests.  FINRA is being sued by Bancorp International Group Inc. (BCIT) and a shareholder in Nevada, for fraud relating to BCIT which did harm to BCIT, its stock, and the shareholders. <u>(Case# CV 13-00506  District Court of Washoe County Nevada)</u>

It is totally inappropriate for FINRA to preside over any arbitration cases involving possible victims of their alleged wrong doing and matters relating in any way to the legal actions they face.  These circumstances are sufficient under <u>section 2 of the Federal Arbitration Act, 9 USC</u> to challenge the validity of the arbitration agreement and render it null and void.  **Attachment 14**

**F**    **These Matters Have been Brought in a Timely Manner.**

This dispute arose in October 2011 when the defendants refused to deliver my share certificate, _McCann, 663 F.3d at 930_ says **"The statute begins to run on the date the defendant engaged in the conduct at issue"** i.e. the non delivery of a share certificate on September 27, 2011.

I have a security entitlement; there is a specific performance of a duty owed to an entitlement holder under 15c3-3, UCC 8 & UCC 2 and there is no time limit on when I exercise my right to change who I hold that entitlement, and an entitlement holder can change the form of holding from indirect to direct, today, or 50 years from now, and does not lose that right at any time.

There is no statute of limitations on ownership of property and under UCC § 2-401 the seller only completes his performance with the physical delivery of the goods, which has not happened yet.

## IV   CONCLUSION

I have tried to get the defendant to resolve this issue but have failed which has left me no other choice but to file with the court.

For the reasons outlined above I respectfully ask the court for an order to compel the defendant to comply with the Uniform Commercial Code, Federal Securities Act and Nevada Revised Statute and deliver a physical share certificate pursuant to Section 15c3-3 of Securities Exchange Act of 1934 for 170,000 (One hundred seventy thousand) Bancorp International Inc shares in the name of Brian Blankenship.

**Brian Blankenship**
Plaintiff
882 Oakland Dr
Princeton
WV 24739
(304) 425 9350

Order Status

Page 1 of 2

*Acct # 77975/571*

# AMERITRADE Apex

| Trade | Portfolio | Streamer Suite™ | Research | Account | bblankenship72 | | Logout | Help |

Search Help [_____] [Go]

Quotes Status: Delayed | Express Trading: Disabled   Mon Aug 29 2005 2:53:42 PM EDT

Home > Trade: Order Status > **Order Activity**

All | Open Orders | **Order Activity** | Today's Trades

View [all ▾] orders from [last 30 days ▾] [Go]

| Entered | Status | Action | Quantity | Symbol | Order Type | Price | Reported Date |
|---------|--------|--------|----------|--------|-----------|-------|---------------|
| 13:57:32, 08/25/05 | Expired | Buy | 20000 | BCIT | Limit | 0.0175 | 16:17:46, 08/25/05 |
| 12:17:02, 08/25/05 | Filled | Buy | 20000 | BCIT | Limit | 0.018 | 12:17:23, 08/25/05 |
| 12:08:03, 08/25/05 | Filled | Buy | 4000 | CMGI | Limit | 1.73 | 12:08:06, 08/25/05 |
| 12:05:45, 08/25/05 | Filled | Sell | 4000 | GTE | Limit | 1.70 | 12:05:47, 08/25/05 |
| 11:19:27, 08/24/05 | Filled | Buy | 50000 | BCIT | Limit | 0.017 | 15:33:50, 08/24/05 |
| 11:16:55, 08/24/05 | Filled | Sell | 0 | GTE | Market | -- | 11:16:57, 08/24/05 |
| 11:16:55, 08/24/05 | Filled | Sell | 700 | GTE | Market | 1.74 | 11:18:05, 08/24/05 |
| 11:16:55, 08/24/05 | Filled | Sell | 300 | GTE | Market | 1.75 | 11:16:57, 08/24/05 |
| 15:47:16, 08/17/05 | Filled | Buy | 100000 | BCIT | Limit | 0.007 | 15:48:52, 08/17/05 |
| 13:45:05, 08/10/05 | Filled | Buy | 100000 | BCIT | Limit | 0.0075 | 13:45:28, 08/10/05 |
| 11:16:41, 08/10/05 | Filled | Sell | 0 | LOUD | Limit | 0.89 | 11:16:43, 08/10/05 |
| 11:16:41, 08/10/05 | Filled | Sell | 1600 | LOUD | Limit | 0.89 | 11:16:43, 08/10/05 |
| 11:16:41, 08/10/05 | Filled | Sell | 300 | LOUD | Limit | 0.89 | 11:16:43, 08/10/05 |
| 11:16:41, 08/10/05 | Filled | Sell | 300 | LOUD | Limit | 0.89 | 11:16:43, 08/10/05 |
| 11:16:41, 08/10/05 | Filled | Sell | 300 | LOUD | Limit | 0.89 | 11:16:43, 08/10/05 |
| 14:24:23, 08/05/05 | Canceled | Sell | 5000 | GTE | Stop | -- | 13:41:57, 08/10/05 |

More

# AMERITRADE

**View Account** | **Tax Reports** | **Export Data** | **Manual Updates** | **Symbol History** | **Check-Up** | **Help** |

## Symbol BCIT Transaction History

Stock: BANCORP INTL GRP     Symbol: BCIT     Cusip: 05968X106     Valid from 08/17/2001

Helpful Topics
WS Wash sales
CA Corporate Actions

### Long Transactions

| Date | Transaction | Shares | Cost | Cumulative Shares | Cost |
|------|-------------|--------|------|-------------------|------|
| 08/10/2005 | Buy BCIT | 100,000 | 760.99 | 100,000 | 760.99 |
| 08/17/2005 | Buy BCIT | 100,000 | 710.99 | 200,000 | 1,471.98 |
| 08/24/2005 | Buy BCIT | 50,000 | 860.99 | 250,000 | 2,332.97 |
| 08/25/2005 | Buy BCIT | 20,000 | 370.99 | 270,000 | 2,703.96 |
| | Current Status | 270,000 | 2,703.96 | | |

HELP

1

*Powered by* **GAINSKEEPER**

\*\*Important Disclaimer: GainsKeeper and tax lot and performance reporting is offered and conducted by CCH INCORPORATED and is made available by TD AMERITRADE for general reference and education purposes only. TD AMERITRADE is not responsible for the reliability or suitability of the information. TD AMERITRADE does not provide investment advice, investment management or tax advice. You may wish to consult independent sources with respect to tax lot and performance reporting.

The GainsKeeper service and the financial information and research, including but not limited to market data, tools, analysis, services and commentary (collectively, "Information") are subject to the GainsKeeper Terms of Usage. Access to and use of the Gainskeeper service and other information is governed by the TD AMERITRADE Terms and Conditions.

TD AMERITRADE does not provide any financial, investment or tax advice and does not recommend or endorse any investment product or strategy. The availability of the Information does not constitute a solicitation or offer to buy or sell any investment product. TD AMERITRADE and its Information providers ("Providers") do not guarantee the accuracy of the information and data provided. Quote information for options that trade on multiple exchanges may not be reflective of trading in all markets. Quote information, either real-time or firm, for OTC Bulletin Board, Pink Sheet and penny stock securities may not be available as these securities trade on a manual basis in markets which may not be electronically linked. Any financial calculators, software or tools may not account for fluctuations in interest rates or other economic conditions and changes. Commentary or analysis regarding the Index or other financial matters is provided by named third parties and may contain forward-looking statements. TD AMERITRADE and its Providers are not responsible for the quality or suitability of this information. All investments involve risk. The past performance of a security, industry, sector, market or financial product does not guarantee future results or returns. Please consult other sources before making any investment decisions. As your agreement for the receipt and use of market data provides, the securities markets and Providers (1) reserve all rights to the market data, tools, analysis, services and commentary that they respectively make available; (2) do not guarantee that data, tools, analysis, services and commentary; and (3) shall not be liable for any loss due either to their negligence or to any cause beyond their reasonable control.

Brokerage services provided exclusively by TD AMERITRADE, Inc. TD AMERITRADE is not responsible for advice, information or management provided by CCH INCORPORATED, or for third party financial or investment information or services, including market data provided by the exchanges. Accounts held with TD AMERITRADE are not directed by TD AMERITRADE. You are responsible for managing your accounts. TD AMERITRADE is not affiliated with CCH INCORPORATED. CCH INCORPORATED is a separate company and is not affiliated with TD AMERITRADE.

TD AMERITRADE and TD AMERITRADE logo are trademarks or registered trademarks of TD AMERITRADE IP Company, Inc. © 2004 TD AMERITRADE IP Company, Inc. All rights reserved. Used with permission.

12/21/2007 8:57 A

## XFINITY Connect

bblankenship72@comcast.ne

± Font Size ±

## Requesting certs for my BCIT holdings Acct#779751571

**From :** bblankenship72@comcast.net

Tue, Sep 27, 2011 04:09 PM

**Subject :** Requesting certs for my BCIT holdings Acct#779751571

**To :** ellen koplow <ellen.koplow@tdameritrade.com>

Dear Ellen,

This has gone on long enough, I am requesting my certificates for the 100,000 shares of BCIT that I purchased on Aug. 10th, 2005 since that transaction took place before the Aug. 16th DTCC's decision to impose a global lock on the security.

As a result, TDAmeritrade continued to allow my transactions even though as the client I was not aware of the DTCC's decision on Aug. 16th. You continued to take my money as I was chasing the stock seeing the huge gains that it was producing so I would like a full refund for the transactions that took place on 8/17, 8/24, and 8/25 of 2005. Surely your company was aware of the DTCC decision but continued to allow my other three transactions before fully locking down the security to buys and sells?

My contract is with you and not the TA, again, I am requesting a paper certificate for the 100,000 shares bought before the lock, and a full refund for the other transactions since TDAmeritrade was not willingly imposing the global lock and continued to take client's money and giving us nothing in return as far as certificates to fulfill your obligation in my account.

I will be more than happy to pay for a paper certificate, and can provide you with details on how to send me my refund for the other erroneous transactions that TDAmeritrade allowed.

Thank you for your time and will wait for your reply, Brian.

**XFINITY Connect**

bblankenship72@comcast.ne

± Font Size ±

## Office of the President Follow Up (KMM71912658V15283L0KM)

**From :** TD Ameritrade - Daniel Pilmaier <dpilmaier@tdameritrade.com>                Thu, Sep 29, 2011 05:04 PM

**Subject :** Office of the President Follow Up (KMM71912658V15283L0KM)

**To :** Brian Blankenship <BBLANKENSHIP72@COMCAST.NET>

Mr. Blankenship,

This correspondence is in response to your inquiry to our firm dated September 27, 2011, regarding your position in Bancorp International Group (BCIT).

TD Ameritrade is a self-clearing brokerage firm which utilizes Depository Trust & Clearing Corporation (DTCC) as our depository. Our clients' securities are held electronically in street name for the benefit of the rightful owner. DTCC is the largest facilitator of this service. As you know, BCIT is currently designated as globally locked by DTCC. When a security is globally locked by DTCC, the security is not available for delivery, transfer, or withdrawal; affectively all activity in the security ceases at DTCC.

The global lock designation was placed on BCIT on August 16, 2005; however, this does not automatically prevent investors from purchasing or selling the security in the open market. The designation simply hinders a brokerage firm?s ability to clear the trade through DTCC. Regardless of when you purchased the security, the global lock affects all shares of BCIT held at DTCC prior to, and after, the effective date.

You purchased your shares of BCIT in the open market, not from this firm, as TD Ameritrade does not make a market in BCIT. Additionally, you purchased shares of BCIT without any recommendation from this firm to do so. When you made your purchases, BCIT was trading in the open market and your original purchases cannot be reversed. A refund request will not be honored.

As a result of the current designation, TD Ameritrade is unable to facilitate your request for a stock certificate of BCIT. Given the circumstances surrounding BCIT, it is unclear whether or not the global lock designation will be removed. I apologize for the frustration this investment has caused you; however, there is nothing further TD Ameritrade can do at this time.

Regards,

Daniel Pilmaier
Senior Research Specialist
Office of the President
TD Ameritrade Holding Corporation

This electronic message transmission contains information from TD Ameritrade Holding Corporation which may be confidential or privileged. The information is intended for the use of the individual or entity whose electronic mail address is named above. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this electronic transmission in error, please notify us by telephone (800-669-3900) immediately.

## XFINITY Connect

bblankenship72@comcast.ne

± Font Size ±

# Re: Office of the President Follow Up (KMM71917093V32321L0KM)

**From :** TD Ameritrade - Daniel Pilmaier <dpilmaier@tdameritrade.com>

**Subject :** Re: Office of the President Follow Up (KMM71917093V32321L0KM)

**To :** Brian Blankenship <BBLANKENSHIP72@COMCAST.NET>

Fri, Sep 30, 2011 04:42 PM

Mr. Blankenship,

As previously stated, regardless of when you purchased the security, DTCC's global lock designation affects all shares held there.

A global lock can be implemented for many different reasons.  There is not a way to know at the time it's implemented whether or not it will be removed, or what the specific reasoning is. In most cases, global lock designations are resolved in a timely fashion.  That is why, as I previously stated, open market trading doesn't automatically stop due to a global lock designation.  Trading was ultimately suspended by the SEC as the circumstances of BCIT escalated; however, investors still had the opportunity to trade the security up until that time. All of our clients' trades were settled and the shares are being held at DTCC.

As a self-directed investor, it is your responsibility to be fully aware of the risks associated with the securities you choose to invest in. I realize this is a negative experience as an investor; however, there is nothing further TD Ameritrade can do regarding this matter. We are unable to facilitate your request for a stock certificate. If you feel you need to pursue this further you will need to do so outside of TD Ameritrade.

Regards,

Daniel Pilmaier
Senior Research Specialist
Office of the President
TD Ameritrade Holding Corporation

This electronic message transmission contains information from TD Ameritrade Holding Corporation which may be confidential or privileged.  The information is intended for the use of  the individual or entity whose electronic mail address is named above.  If you are not the intended recipient, be aware that any disclosure,  copying, distribution or use of the contents of this information is  prohibited. If you have received this electronic transmission in error, please notify us by telephone (800-669-3900) immediately.

**XFINITY Connect**

bblankenship72@comcast.ne

± Font Size ±

## Letter Dated 9/20/2012 (KMM76504988V86276L0KM)

**From :** TD Ameritrade - Tommie Richardson <trichardson@tdameritrade.com>

Wed, Oct 03, 2012 05:46 PM

**Subject :** Letter Dated 9/20/2012 (KMM76504988V86276L0KM)

**To :** Brian Blankenship <BBLANKENSHIP72@COMCAST.NET>

Mr. Blankenship,

You have previously been advised of our firm?s position on this matter. This issue will not be revisited. If you feel you must pursue this further, you may do so outside of TD Ameritrade.

Regards,

Tommie Richardson
Senior Research Specialist
Office of the President
TD Ameritrade

XFINITY Connect                                                                                              Page 1 of 1

**XFINITY Connect**                                                                bblankenship72@comcast.ne

## Meeting 10b-10 rule for my BCIT trades Account 779751571

**From :** bblankenship72@comcast.net                                       Wed, Mar 27, 2013 03:56 PM
**Subject :** Meeting 10b-10 rule for my BCIT trades Account 779751571
**To :** dpilmaier@tdameritrade.com

Your email fails to answer the demand made under rule 10b-10 to disclose the identity and details of the seller and the securities you
bought for me.
I must insist that you provide this information immediately. Rule 10b-10 Securities Exchange Act 1934, the trade confirmation rule is
**very clear and  requires broker-dealers to confirm the identity, quantity and price of securities obtained on behalf of
customers.**

You have never told me who you bought my shares from and I want to know NOW.

Please do not respond by sending irrelevant information about a FINRA arbitration case.



**U.S. Securities and Exchange Commission**

**U.S. SECURITIES AND EXCHANGE COMMISSION**

**Litigation Release No. 20466 / February 25, 2008**

*Securities and Exchange Commission v. Mario A. Pino*, Civil Action No. 08-CV-353 (MHM) (D.C. Ariz.)

**Securities and Exchange Commission Charges Individual with Violating Antifraud and Securities Registration Provisions of the Federal Securities Laws**

The Securities and Exchange Commission today announced that it filed a complaint in the United States District Court for the District of Arizona against Mario A. Pino for violating the antifraud and securities registration provisions of the federal securities laws. The complaint alleges that Mario A. Pino usurped the "corporate identity" of Bancorp International Group, Inc. ("BCIT"), a public shell, by fabricating, issuing, and trading fraudulently issued shares of the company. The complaint also alleges that Pino issued false press releases between May 2 and July 13, 2005, and issued millions of shares of fraudulent BCIT stock to himself and others. The complaint alleges Pino sold 175,005,000 shares, earning profits of $269,033, in unregistered, non-exempt transactions into the resulting inflated market.

The complaint alleges that Pino violated Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 (Securities Act) and Section 10(b) of the Exchange Act of 1934 (Exchange Act) and Rule 10b-5 thereunder. The Commission seeks a permanent injunction against Pino, disgorgement, including pre- and post-judgment interest, third tier civil penalties, an officer and director bar, and a penny stock bar. [*SEC v. Mario A. Pino*, Civil Action No. 08-CV-353 (MHM), U.S. District Court for the District of Arizona] (LR-20466).

➤ SEC Complaint in this matter

*http://www.sec.gov/litigation/litreleases/2008/lr20466.htm*



# The Depository Trust Company
# IMPORTANT



| | |
|---|---|
| **B#:** | 8418 |
| **DATE:** | August 16, 2005 |
| **TO:** | All Participants, Depository Facilities, and Pledgee Banks |
| **CATEGORY:** | Operations |
| **FROM:** | Michael Tulaney, Vice President |
| **ATTENTION:** | Managing Partners, Officers, and Cashiers |
| **SUBJECT:** | Special Alert Regarding Bancorp International Group, Inc. |

Be advised that effective August 11, 2005, DTC has suspended all services, except Custody services, for the below referenced issue.

| CUSIP | SECURITY NAME |
|---|---|
| 05968X106 | Bancorp International Group Inc. |

Please see the attached press releases from the company providing notice, among other things, that "individuals and corporate entities involved with the illegal takeover of the company printed invalid share certificates".

DTC participants are, therefore, strongly urged to take whatever precautions are necessary in order to protect themselves and their customers in light of this continuing problem and to notify correspondent firms and other parties that may be affected by this problem.

Questions regarding this notice should be directed to the company, or DTC's Nick Cerchio at (212) 855-5006.

Bancorp International Group Inc. Announces Initial Interim Conclusions of Ongoing Investigation

PrimeZone via COMTEX

**Aug 1, 2005 5:53:18 PM**

NEW YORK, Aug 1, 2005 (PRIMEZONE via COMTEX) --

Let it be known that as a result of the BCIT announcement at 10:30 a.m. on 6/13/2005 the company hereby announces the initial interim conclusions of an ongoing investigation.

The company has been the victim of corporate identity fraud (click on the URL below). On 4/21/05 via fraudulent documents filed by a "Louis Lesser" with the Nevada Secretary of State, there was an illegal attempt to take over BCIT by Carter Care Inc. by way of a purported reverse merger (5/12/2005). This occurred without the knowledge and consent of the BCIT shareholders and board. Prior to BCIT being alerted of the fraud, there was no contact with or knowledge of Carter Care Inc. by BCIT and its board. Carter Care was subsequently contacted, and a verbal agreement was reached for a retraction in the form of a wire announcement by Carter Care. However, an announcement was illegally made under the BCIT banner and referred to a reverse merger that had never legally occurred.

https://esos.state.nv.us/SOSServices/AnonymousAccess/CorpSearch/CorpDetails.aspx?CorpID=243077

Let it be known that those individuals and corporate entities involved with the illegal takeover of the company printed invalid share certificates with the legend Bancorp International Group Inc. These certificates were signed by Richard Carter of Carter Care, and hundreds of millions of shares have since been printed. These shares are apparently being illegally sold by market maker Sterne, Agee & Leach, Inc. (SACM) http://sterneagee.com, trading office 980 North Federal Highway, Suite 108, Boca Raton, Fl 33432; tel (800) 930 3536. The Birmingham, Alabama office of the Federal Bureau of Investigation has been initially contacted in this regard.

Let it be known that these shares have no value and do not constitute any of the legal equity of BCIT. The official printed and issued shares of BCIT do not exceed 4,890,000 shares which bear the legend March Indy, signed by Thomas Megas. The investigation is ongoing, and state and federal regulators have been made aware of the problem. Attempts to agree to compensation of $2,000,000 for damages have foundered on the issue of criminal liability. The company accepted $50,000 as a partial payment to cover initial investigation expenses and as part of an overall settlement for damages.

BCIT has not signed nor entered into any agreement relating to any gold or diamond mining venture and has made no announcements to that effect. BCIT has made only one previous recent announcement on 6/13/2005.

In November 2004 BCIT commenced bringing its SEC filings up to date and consulted with brokers in the USA and Europe regarding a reverse merger with a European realty business. BCIT hopes to rehire its original transfer agent http://pacificstocktransfer.com in tandem with its SEC filings. On 6/20/2005 Thomas Megas and Martin Duffy were reinstated as officers of the company with the Nevada Secretary of State. On 7/28/2005, Blue-sky Solutions, LLC, having been hired by the fraudulent parties, resigned as investor relations contact for the company.

In the interest of protecting current shareholders who may unwittingly be holding illegally printed shares, BCIT will be petitioning the NASD to enforce SEC rule 203(b)(3) http://www.law.uc.edu/CCL/regSHO/rule203.html and effect a "buy-in" by the parties who originally sold the invalid shares signed by Richard Carter and have effectively "failed to deliver" what they represented as valid shares of BCIT.

SOURCE: Bancorp International Inc.

Thomas Megas President and CEO Bancorp International Group Inc 15 Onslow Gardens Suite 7 London, SW7 3AW United Kingdom Phone: 44 20 78239258

(C) 2005 PRIMEZONE, All rights reserved.

*Source:* Bancorp International Inc.

### Bancorp International Group, Inc. Announces Share Certificate Forgeries

NEW YORK, Aug. 11, 2005 (PRIMEZONE) -- With regard to the on-going investigation, Thomas Megas, the President of Bancorp International Group, Inc., announced the following statement: "Let it be known that share certificates bearing the legend 'Bancorp International Group Inc' and purportedly signed by Mr. Thomas Megas as President and M. Puig as Secretary are forgeries and therefore do not constitute any part thereof the issued equity of BCIT. BCIT have never issued such certificates bearing this legend."

```
Thomas Megas. President, BCIT
CONTACT: Bancorp International Group
         B. Wakeling
         001447961992681
```



UNITED STATES OF AMERICA
Before the
SECURITIES AND EXCHANGE COMMISSION
August 31, 2005

| | | |
|---|---|---|
| IN THE MATTER OF | : | ORDER OF SUSPENSION |
| Bancorp International Group, Inc. | : | OF TRADING |
| | : | |
| File No. 500-1 | : | |

It appears to the Securities and Exchange Commission that all of the securities currently trading in the name of Bancorp International Group, Inc. ("BCIT") and purportedly signed by Thomas Megas as President and M. Puig as Secretary are counterfeit. BCIT is quoted on the Pink Sheets LLC.

The Commission is of the opinion that the public interest and the protection of investors require a suspension of trading in the securities of BCIT.

Therefore, it is **ORDERED**, pursuant to Section 12(k) of the Securities Exchange Act of 1934, that trading in BCIT is suspended for the period from 9:30 a.m. EDT, August 31, 2005 through 11:59 p.m. EDT, on September 14, 2005.

By the Commission.

Jonathan G. Katz
Secretary



CUSIP SERVICE BUREAU
STANDARD & POOR'S, a division of The McGraw-Hill Companies, Inc.
55 Water Street, New York, NY 10041

January 09, 2006

SKIP CUNNINGHAM
DUNN SWAN & CUNNINGHAM P C
210 PARK AVE SUITE 2800
OKLAHOMA CITY,OK 73102

Mr. SKIP CUNNINGHAM

This is in response to your request for the EXPRESS assignment
of a Corporate CUSIP Number to:

ISSUER: BANCORP INTL GROUP

CUSIP NUMBER: 05968X 20 5
ISIN NUMBER : US05968X2053
ISSUE DESCRIPTION: COM NEW
RATE:
MATURITY:


IMPORTANT NOTICE:

The CUSIP Service Bureau requires that FINAL documentation
(i.e. prospectus or official statement in print or electronic
form) be sent to the CUSIP Service Bureau as soon as it is
available.  'Requestor' risks suspension and/or withdrawal of
the CUSIP number(s) without the receipt of final documentation
by the CUSIP Service Bureau within 10 days of the offering date.

E-Mail addresses for final documents:

| | |
|---|---|
| Corporate | cusip_corpfinal@standardandpoors.com |
| Municipal | cusip_munifinal@standardandpoors.com |

Address for print documents:

CUSIP Service Bureau
Standard & Poor's CUSIP Service Bureau
55 Water Street, 47th Floor
New York, NY 10041

'Requestor' receives a 10% discount on CUSIP applications made
via the Internet. From the CUSIP home page (www.cusip.com),
click the CUSIPRequest button.

E-mail addresses for electronic preliminary documentation:

Corporate     cusip_corp@standardandpoors.com
Municipal     cusip_muni@standardandpoors.com
PPN           cusip_ppn@standardandpoors.com
International  cusip_global@standardandpoors.com

Please call the CUSIP Data Collection department at (212) 438-6565 with any questions.

Sincerely yours,

Gerard Faulkner
Editor
CUSIP Service Bureau

The assignment of a CUSIP number to a particular security by
Standard & Poor's is not intended by Standard & Poor's to be,
and should not be construed as, an endorsement of such security,
a recommendation to purchase, sell or hold such security or an
opinion as to the legal validity of such security.

Privacy Notice - Standard & Poor's CUSIP Service Bureau does not
share your contact information with other companies or McGraw-Hill
units. For more information about the McGraw-Hill Companies' Privacy
Policy, visit our Web site http:// www.mcgraw-hill.com/privacy.html
or call us at (212) 438-6552. To review the accuracy of the inform-
ation we have collected from you, please mail written request to:
Standard & Poor's CUSIP Service Bureau, Attention: Maria Latorraca,
55 Water Street, New York, NY 10041

Please be advised that the CUSIP Service Bureau has instituted an
annual Data Certification initiative. The issuer will be contacted
directly and asked to certify the data elements the CUSIP Service
Bureau has in regards to it issues.

This Confirmation was sent by e-mail at 16:07:52 09 Jan 2006.

CUSIP
Trademark of the Committee on Uniform Security Identification Procedures.
The American Bankers Association.

On 03 January 2012 at 15:22 "Popper, Rosalinda" <rosalinda_popper@cusip.com> wrote:

Please note that CUSIP number 05968X205 is active and a valid number showing in our database.


Sincerely,


**Rosalinda Popper**
**Data Collector/Corporate Department**
**CUSIP Global Services**
*55 Water Street - 45th Floor*
*New York , NY 10041*
☎ *Phone: (212) 438-6565*
🖷 *Fax: (212) 438-6577*
✐ *Email: rosalinda_popper@cusip.com*



CUSIP / CINS : 05968X205

ISSUER DATA
Issuer Number      05968x
Name               SANDER INTL GROUP
Group              CUSIP6Intl
Type               Corporate

Domicile           United States (US )
State              Nevada

ISSUE DATA
Issue Number       20 P
Description         CTY NEW
ISIN               US05968X2051
Group              CUSIP9Intl
Type               Equity





**Bancorp International Group Inc (BCIT) States That There Are No Longer Any Unauthorized/Counterfeit BCIT Shares Certificates On the Former Cusip 05968X106 Outstanding**

Since the case heard by the District Court of Oklahoma in January 2006 and despite repeated requests, no reporting institution or shareholder has claimed to be in possession of or produced an unauthorized or counterfeit BCIT share certificate on the cusip 05968X106.

Carson City Nevada (PRWEB) January 07, 2013

The Securities Exchange Commission (SEC) claimed in Litigation Release No. 20466 Bancorp International Group, Inc., BCIT, (the "Company"), was a victim of corporate identity theft between May and August 2005, when it is alleged that 41 unauthorized/counterfeit share certificates on cusip 05968x106 representing approximately 245,000,000 shares allegedly entered the market place.

On Friday January 6, 2006 the District Court of Oklahoma (Case No. CJ-2005-7459) issued a court order to allow the company to issue new shares under Section 3(a)(10) of the Security Exchange act of 1934 which would be exchanged for the 245,000,000 (approx.) unauthorized shares as identified by the SEC. This court order in effect resolved all legal and outstanding issues surrounding the unauthorized/counterfeit shares in 2005 as identified by the SEC.

On January 9, 2006 Standard & Poors (S&P) issued a new Cusip number to BCIT which is 05968X205 and this remains the one and only correct and active cusip number for Bancorp International Group Inc.

Prior to August 31, 2005, Bancorp International Group Inc (BCIT) only issued 8 share certificates bearing the name Bancorp International Group Inc Cusip 05968X106 totalling 795,518 shares. These legitimate certificates on cusip 05968x106 were cancelled on October 15, 2012 when the board of directors of Bancorp International Group Inc passed a resolution in accordance with NRS 78.25. That resolution allowed for those genuine BCIT share certificates on cusip 05968x106 to be exchanged for new certificates on the current active cusip 05968x205 in accordance with Oklahoma District Court order CJ-2005-7459. This was announced to the shareholders and reporting institutions by letter and Press Release dated October 25, 2012.

On December 21, 2012 BCIT announced that after consultation with The Depository Trust & Clearing Corporation (DTCC) & Financial Industry Regulatory Authority, Inc. (FINRA) the Company had written to all reporting institutions who are shown to have a position in BCIT stock, on either the DTCC Stock Position Report (SPR) or Broadridge's Non Objecting Beneficial Owners list (NOBO) requesting they carry out an immediate search of their depositories to locate & trace any Bancorp International Group certificates on the former cusip 05968x106 which should have been surrendered to the registered transfer agent Empire Stock Transfer of Henderson Nevada before close of business on December 31, 2012. These letters were backed up by a press release

The United States Postal Service has confirmed that all the all reporting institutions who are shown to have a position in BCIT stock, on either the DTCC Stock Position Report or Broadridge's Non Objecting Beneficial Owners list (NOBO) have received and signed for their letters, yet neither BCIT nor their registered Transfer Agent Empire Stock Transfer have been contacted by any of these institutions to report their holding of a BCIT certificate on the former inactive cusip 05968x106.

This confirms that since the case heard by the District Court of Oklahoma in January 2006 no unauthorized of counterfeit BCIT shares on the cusip 05968X106 have come to light as being in the in the public domain because there are no such certificates unaccounted for. This taken with the cancellation of the eight genuine BCIT certificates on the cusip 05968x106 in October 2012 means that there are no valid BCIT certificates with the cusip 05968x106 and no reporting institution has any legitimate or lawful excuse for being in possession of such a certificate.

This matter is now closed and will not be revisited.

**Contact Information**

**Thomas Megas**
Bancorp International Group Inc
http://www.bcit-inc.com
775 461-2578



11

NUMBER
2248
COMMON STOCK

SHARES
***500***
COMMON STOCK
CUSIP 05968X205

# BANCORP INTERNATIONAL GROUP, INC.

INCORPORATED UNDER THE LAWS OF THE STATE OF
NEVADA

SEE REVERSE FOR CERTAIN DEFINITIONS

THIS CERTIFIES THAT

***TD Ameritrade, Inc***

RESTRICTED
CONTROL

is the Owner of *** Five Hundred ***

FULLY PAID AND NON-ASSESSABLE SHARES OF COMMON STOCK OF
BANCORP INTERNATIONAL

*transferable on the books of the Corporation by the holder hereof, in person or by duly authorized attorney, upon surrender of this Certificate properly endorsed. This Certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar.*

*Witness this facsimile seal of said Corporation and the facsimile signatures of its duly authorized officers.*

Dated: March 26, 2012

COUNTERSIGNED AND REGISTERED.
EMPIRE STOCK TRANSFER INC.
Transfer Agent and Registrar

By
AUTHORIZED SIGNATURE

CORPORATE SEAL

SECRETARY

PRESIDENT

B 19002

*12*

## ARBITRATION PANEL ORDER 12-01838

February 19, 2013

I, Christopher Raymond Grabowski, reside at 28440 Jahns Street, Roseville, Michigan.

On 26 August 2005 I purchased 25,000 shares of Bancorp International Group, Inc. (BCIT) thru my on-line broker TD Ameritrade.  As a result of TD Ameritrade refusing to deliver a certificate to me for these 25,000 shares, I filed my dispute with FINRA Dispute Resolution.  My case number 12-01838 was heard by arbiter/chairperson Mr. Seth H. Barsky.

On 9, January 2013 I received the arbitration panel order via an e-mail from Cicely Moise at Cicely.Moise@finra.org .  Attached are the 3 pages I received.

The order, dated 2, January 2013, states:

> ***"Respondent at its own expense shall deliver to Claimant within 90 days of the final order, stock Certificate(s) of Bancorp International Group, Inc. (Cusip number 0596X205), for 25,000 shares.  The owner of the shares will be Christopher Grabowski. 28440 Jahns, Roseville, Mi 48006."***

I, Christopher Raymond Grabowski, make these statements and say these to be true and are accurate to the best of my ability and I give this information under penalty of perjury.  I am willing to attend court or other formal proceedings and give evidence if required to do so.

Christopher Raymond Grabowski
28440 Jahns Street
Roseville, Michigan. 48066

Appeared before me on 2-18-13 was Christopher Grabowski

ANNETTE D. NOLEN
NOTARY PUBLIC, STATE OF MI
COUNTY OF MACOMB
MY COMMISSION EXPIRES Mar 15, 2014
ACTING IN COUNTY OF Macomb



My name is Timothy Colby

I am a citizen of the United States and live at 4300 W 105th Ave, Crown Point
IN 46307

On or around August 26, 2005 I purchased 50,631 shares in Bancorp International
Group (BCIT) through my brokers Pro Equities in Alabama

I made a request to Pro Equities for physical shares on January 25, 2013 and I have
since been provided with two certificates.  Both are dated February 26, 2013 and
bear the current active cusip 05968x205.

The first certificate # is 2307 for 5,000 shares the second is Certificate #2308 and is
for 50, 631

This statement is true and given under penalty of perjury copies of my certificates
are attached.

Timothy Colby



Official Seal
KATHLEEN LASKI
Resident of Lake County IN
My commission expires
February 14, 2015

1





3



14

1  Michael J. Morrison, Esq. SBN 1665
2  1495 Ridgeview Drive, Suite 220
   Reno, Nevada 89519
3  Telephone: (775) 827-6300
   Attorney for Plaintiffs
4

5

6              SECOND JUDICIAL DISTRICT COURT

7            COUNTY OF WASHOE, STATE OF NEVADA

8
   BANCORP INTERNATIONAL GROUP,
9    a Nevada corporation;
   DOUGLAS R. CARON, an individual,
10         Plaintiffs,                    CASE NO. CV13-00510

11                                        DEPT. NO.

12            vs.

13
   FINANCIAL INDUSTRY REGULATORY
14 AUTHORITY, INC., a Nevada corporation;
   DEPOSITORY TRUST COMPANY, a New York
15 Limited Purpose Trust Company; DEPOSITORY
   TRUST AND CLEARING CORPORATION, a
16 New York corporation; NATIONAL SECURITIES
   CLEARING CORPORATION, a foreign corporation;
17 FIXED INCOME CLEARING CORPORATION,
   a foreign corporation; DOES 1 through 100, inclusive;
18 ROE CORPORATIONS 1 through 80, inclusive;
   BLACK CORPORATIONS 1 through 80, inclusive,
19
20         Defendants.

21

22                   COMPLAINT
                   CLAIMS FOR
23    DECLARATORY RELIEF, INJUNCTIVE RELIEF,
                FRAUD, CONSPIRACY
24           AND RELATED MISCONDUCT

25        REQUEST EXEMPTION FROM ARBITRATION

      (EQUITABLE RELIEF AND DAMAGES IN EXCESS OF $50,000)

- 1 -

MICHAEL J. MORRISON
Attorney and Counselor at Law
1495 Ridgeview Drive, Suite 220
Reno, NV 89590
(775) 827-6300 • fax (775) 827-6311

COME NOW Plaintiffs, and as and for a Complaint against Defendants, allege as follows:

## JURISDICTION AND VENUE

1.     Plaintiff  BANCORP  INTERNATIONAL GROUP, a Nevada corporation, ("BCIT") is domiciled in the State of Nevada and Defendants, and at all times pertinent hereto, conducted business in the State of Nevada. Plaintiff DOUGLAS R. CARON ("CARON") is a shareholder  of  BCIT.  Plaintiff  BCIT  and  Defendant  FINANCIAL  INDUSTRY REGULATORY AUTHORITY, INC., ("FINRA"), are both citizens of and are domiciled in Nevada. There is no diversity of citizenship or federal question raised herein and, thus, there is no jurisdiction in the U.S. federal courts. All Defendants have, at all times pertinent hereto, conducted business in Nevada, and engaged in conduct directed at and intended to affect and cause damage to BCIT and its shareholders in Nevada.

2.     Jurisdiction is proper in the state court of the State of Nevada.

3.     Plaintiff  BCIT's registered office and principal place of business is in Nevada, and venue is proper therein.

4.     Plaintiffs bring this action for the damages sustained by them as a result of Defendants' wrongful acts and conduct and for other relief, equitable and legal, as may be appropriate.  This action is commenced within the time prescribed by the applicable statutes of limitations.

## GENERAL ALLEGATIONS

5.     Plaintiffs reallege and incorporate herein by reference the allegations set forth in paragraphs 1-4 above as though fully set forth herein.

6.     Plaintiff BCIT is a corporation duly organized and existing pursuant to the laws of the

MICHAEL J. MORRISON
Attorney and Counselor at Law
1495 Ridgeview Drive, Suite 220
Reno, NV 89509
(775) 827-6300 • Fax (775) 827-6311

- 2 -

1  State of Nevada, and, at all times pertinent hereto, was authorized to do business and was

2  domiciled in the State of Nevada. Plaintiff BCIT is registered with the Securities and

3  Exchange Commission ("SEC") and is a publicly-traded company, has filed reports pursuant

4  to the Securities Exchange Act of 1934 ("34 Act") and its shares of common stock are listed

5  for trading on the Over-The-Counter Bulletin Board ("OTCBB"), under the symbol "BCIT".

6  7.    Plaintiff CARON is an individual and a shareholder of BCIT, and, at all times pertinent

7  to this Complaint, was a purchaser and a seller of BCIT securities in the OTCBB market,

8  from and through his broker-dealer, and his shares are subject to the jurisdiction and direct

9  and/or indirect administrative/regulatory control of Defendants, and each of them, and

10  specifically, Defendant FINRA, and Defendants, and each and all of them, have engaged in

11  conduct affecting and damaging Plaintiffs and their respective rights and interests.

12  8.  At all times relevant hereto, Defendant DEPOSITORY TRUST AND CLEARING

13  CORPORATION ("DTCC") was a New York corporation.

14

15  9.  Defendant DEPOSITORY TRUST COMPANY ("DTC") is a limited purpose trust

16  company formed under the laws of New York, and is a self-regulatory organization.

17  10.  DTC is a wholly-owned subsidiary of DTCC. Defendant NATIONAL SECURITIES

18  CLEARING CORPORATION ("NSCC") is a foreign corporation and a wholly-owned

19  subsidiary of DTCC.

20  11. Defendant FIXED INCOME CLEARING CORPORATION ("FICC") is a foreign

21  corporation and a wholly-owned subsidiary of DTCC. DTCC, DTC, NSCC and FICC will be

22  jointly referred to herein as "DTC". At all times pertinent hereto, DTC was doing business in

23  Nevada.

24

25

MICHAEL J. MORRISON
Attorney and Counselor at Law
1495 Ridgeview Drive, Suite 220
Reno, NV 89509
(775) 827-6400 • Fax (775) 827-6111

- 3 -

12.   DTCC's Board is made up of 21 directors, who also serve as directors of the DTCC's

operating subsidiaries, DTC, NSCC and FICC, as set forth above. Seventeen directors

represent DTC Participants, including international broker-dealers, correspondent and

clearing banks, mutual fund companies and investment banks.

13. The remaining two directors are the chairman and chief operating officer of DTCC itself.

14.   Individuals are nominated for election as DTCC directors based on their ability to

represent participants of each of DTCC's operating subsidiaries, and Board committees are

specifically structured to help achieve this objective.

15.   Defendant FINRA is a corporation duly organized and existing pursuant to the laws of

Nevada,  and, at all times pertinent hereto, conducted business in the State of Nevada.

FINRA is authorized to control/regulate/ govern trading in the stock of BCIT.

16.   Plaintiffs do not know the true names or capacities of the Defendants sued herein as

DOES 1-10 and BLACK CORPORATIONS 1-10 and, therefore, Plaintiffs sue said

Defendants by fictitious names.  Plaintiffs are informed and believes, and therefore, allege,

that each of said Defendants is legally responsible for the claims for relief and the events and

happenings referred to herein, and caused damages to Plaintiffs, as alleged herein. Plaintiffs

anticipate amending this Complaint to name additional firms of securities professionals which

are or have been involved in the conduct alleged herein, as well as individuals who are or

have been involved in such conduct. Defendants DOES  1 through 20, inclusive,  are each

individuals operating as a broker and trader in a foreign jurisdiction and who, at all times

pertinent hereto, conducted business in the State of  Nevada.  DOES 21 through 40 are

licensed by FINRA (formerly the National Association of Securities Dealers, Inc.) and

authorized to trade the stock of BCIT ("FINRA LICENSED DOES"). Further, Defendants

MICHAEL J. MORRISON
Attorney and Counselor at Law
1495 Ridgeview Drive, Suite 220
Reno, NV 89509
(775) 827-6300 • Fax (775) 827-6311

- 4 -

DOES 41 through 60 are employees of FINRA ("FINRA EMPLOYEES"). At all times

mentioned herein, FINRA EMPLOYEES were agents and employees of Defendant FINRA,

and at all times mentioned herein, were acting within the scope of said employment or agency

and with the permission, knowledge, consent and direct supervision and control of Defendant

FINRA.   Plaintiffs believe that said FINRA EMPLOYEES were negligent or responsible in

some manner for the events herein referenced and negligently, carelessly, recklessly and in a

manner that was grossly negligent and/or willful and wanton, including engaging in a

conspiracy with other Defendants or persons, including Roe Corporations 1-40 and Black

Corporations 1-40, to harm Plaintiffs, and caused damages proximately to the Plaintiffs, as

herein alleged.

17.      At all times pertinent hereto, certain Defendants were the agents and/or

employees of certain co-Defendants and, in doing the things hereinafter alleged, were acting

in concert with each other and within the course and scope of such agency and/or employment

and with the permission and consent of such co-Defendants, all in furtherance of their

unlawful schemes to deprive Plaintiffs of money, shares and investment opportunity and

capital, and to deprive Plaintiffs of their respective contract and other rights.

## SPECIFIC ALLEGATIONS

18.      Plaintiff CARON was a *bona fide* purchaser and seller of BCIT stock and the

administrative and market activities of Defendants had a direct and proximate impact on his

share transactions, including purchases and sales, and ability to obtain possession of his stock,

all as further alleged herein.

19.      Defendants are engaged in the securities industry as stock depositories and/or clearing

agents, and/or regulators in the markets for securities, all dealing with and having some

MICHAEL J. MORRISON
Attorney and Counselor at Law
1495 Ridgeview Drive, Suite 220
Reno, NV 89509
(775) 827-6300 • Fax (775) 827-6511

control/regulatory powers/governing authority over the BCIT stock and market activities related thereto, as well as CARON's stock and business activities related thereto.

20.    Each of the Defendants has established, maintained, facilitated and/or participated, directly or indirectly, in activities allowing each of the other Defendants to establish and/or perpetuate a regulatory prohibition against buying, selling, establishing a trading market or trading the BCIT stock.

21.    The SEC has claimed, in Litigation Release No. 20466, that Bancorp International Group (BCIT), was a victim of corporate identity theft in 2005, when, between May and August 2005, it is alleged by the SEC that 41 unauthorized stock certificates representing approximately 245,000,000 shares allegedly illegally entered the market place. Defendants were involved, directly or indirectly, in such activities in the market place.

22.    Due to the huge unexplained increase in trading volume (from May to August 2005), BCIT's trading volume was 2,076,500,035 shares - 424 times the total of all BCIT shares issued and outstanding, and 1,892 times the total of BCIT shares in the legal public float - BCIT contacted the SEC, the Financial Industry Regulatory Authority (FINRA, then NASD) and the DTCC to alert them of the anomalous trading activity.

23.    Subsequently, the DTCC suspended clearing services for BCIT shares on August 11, 2005, although many brokers continued to publicly trade BCIT shares, in contravention of the suspended clearing status. This suspension, often referred to in securities parlance as a DTCC "global lock", applied to all shares bearing the name Bancorp International Group and CUSIP Number 05968X106, but, very significantly in the context of this case, **the "global lock" only involved 8 certificates representing 795,518 shares.** The regulatory records clearly and unequivocally reflect that **DTCC (and its participants) were short, and, therefore,**

MICHAEL J. MORRISON
Attorney and Counselor at Law
1495 Ridgeview Drive, Suite 220
Reno, NV 89509
(775) 827-6300 • Fax (775) 827-6511

- 6 -

needed to cover 328,000,000 BCIT shares.

24.   The "CUSIP Number" is a critical issue in this case. CUSIP stands for "Committee on Uniform Securities Identification Procedures" and is the unique number issued for each individual security, and is only valid for, and applies to and identifies only that one single individual security. It is a number only issued to U.S. and Canadian registered stocks, and U.S. government bonds.  The CUSIP Number consists of a combination of nine characters, both letters and numbers, which act as a sort of DNA for the security - uniquely identifying the company or issuer and the type of security. The first six characters identify the issuer and are assigned in an alphabetical fashion; the seventh and eighth characters (which can be alphabetical or numerical) identify the type of issue; and the last digit is used as a check digit.

25.   The CUSIP Service Bureau is operated and administered solely and exclusively by Standard & Poor's on behalf of the American Bankers Association (ABA), and performs a critical function in the identification and control of securities in the financial market place, which is a significant issue in this case.

26.   On August 31, 2005, the SEC announced a temporary suspension of trading in BCIT's shares, commencing at 9:30 a.m. on August 31, 2005, and terminating at 11:59 p.m. on September 14, 2005. The purpose of the SEC temporary suspension was to facilitate efforts by participants in the financial market place to locate any unauthorized BCIT shares in the system and allow such shares to be surrendered to either the FBI or the SEC. Reporting institutions were given one (1) working day to locate and submit fake/fraudulent BCIT shares.

27.   Subsequent to the termination of the SEC temporary suspension of trading in BCIT's shares, on Friday, January 6, 2006, the U.S. District Court of Oklahoma (Case No. CJ-2005-7459) (the "Oklahoma Case"), issued and entered a court order to allow BCIT to issue new

MICHAEL J. MORRISON
Attorney and Counselor at Law
1495 Ridgeview Drive, Suite 220
Reno, NV 89509
(775) 827-6300 • fax (775) 827-6311

shares under Section 3(a)(10) of the 34 Act, which would be exchanged for the 245,000,000 (approx.) unauthorized BCIT shares (which was the number of BCIT the SEC had identified as being in the market place), in exchange for cash damages by the various parties, all as more specifically detailed in the settlement agreement in the Oklahoma Case.

28.     On January 6, 2006, BCIT filed with the Secretary of State of Nevada an amendment to BCIT's Articles of Incorporation, altering the capital structure of BCIT.

29.     Based on (and because of) this amended capital structure, on Monday, January 9, 2006, Standard and Poor's CUSIP Global Services issued a new CUSIP Number for the BCIT shares – CUSIP Number 05968X205 - and rendered the former CUSIP Number 05968X106 - inactive.

30.     Standard & Poor's CUSIP Global Services has unconditionally confirmed that the sole and exclusive, and the current active CUSIP Number for Bancorp International Group shares is 05968X205. CUSIP Number 05968X106 is null void and worthless.

31.     During the activities described above, including the activities in the Oklahoma Case and the changes in BCIT CUSIP Numbers, there had been no time for BCIT to design and produce a new BCIT share certificate before the court order was issued in the Oklahoma Case. Therefore, since it was clearly no longer legal to use the then-existing BCIT share certificates containing the now-invalid/cancelled CUSIP Number 05968X106, BCIT, on the advice of counsel and with the permission of the Oklahoma Court, issued two share certificates with the pre-printed name "March Indy" on the face of the certificates (March Indy was the former name of the corporation, before it was changed to BCIT) and BCIT marked through and eradicated the words "March Indy" and printed the name "Bancorp International Group" on the face of the two (2) certificates, and also, very significantly,

MICHAEL J. MORRISON
Attorney and Counselor at Law
1495 Ridgeview Drive, Suite 220
Reno, NV 89509
(775) 827-6300 • Fax (775) 827-6311

- 8 -

printed the newly-issued CUSIP Number 05968X205 on the face of the two (2) subject certificates ("March Indy Certificates"). This protocol, sanctioned by the Oklahoma Court, prevented any confusion or issues which may have arisen if an old BCIT certificate, with the then-invalid CUSIP Number on it, had been used.

32.    One March Indy Certificate was issued to Captial Growth for 219,723,000 shares, which was transferred to First Clearing LLC and, on February 22, 2006, exchanged it for a BCIT Certificate # 2093, clearly bearing the newly-issued CUSIP Number 05968X205.

33.    The other March Indy Certificate was issued to JH Darbie for 25,025,000 shares, as per the settlement in the Oklahoma Case, and then transferred to National Financial Services and, on November 6, 2006, was exchanged for BCIT Certificate #2110, clearly bearing CUSIP Number 05968X205.

34.    The two (2) newly-printed, newly-issued BCIT stock certificates (#2093 and #2110) bear the newly-issued CUSIP Number 05968X205.

35.    It is significant to this case that BCIT Certificates #2093 and #2110 were never, and are not now subject of a "global lock" by DTC.

36.    In January 2007, Empire Stock Transfer, 1859 Whitney Mesa Drive, Henderson, NV 89014, took over as transfer agent for BCIT and its shares.

37.    BCIT has been diligently trying to help beneficial owners of lawfully issued and outstanding shares of BCIT obtain physical delivery of share certificates under section 15(c)(3) of the 34 Act, which provides that each shareholder of a corporation has an absolute right to receive a share certificate. However, stock brokers say they are unable to deliver the shareholder-demanded BCIT share certificates to their clients/shareholders of BCIT due to the "global lock" imposed by DTCC.

MICHAEL J. MORRISON
Attorney and Counselor at Law
1495 Ridgeview Drive, Suite 220
Reno, NV 89509
(775) 827-6300 • Fax (775) 827-6311

- 9 -

38.     However, DTCC has only placed a "global lock" on BCIT shares bearing CUSIP Number 05968X106 ("CUSIP 106"),  and have not placed a "global lock" or otherwise restricted BCIT share certificates bearing the current active and valid CUSIP Number 05968x205 ("CUSIP 205").

39.     Additional relevant facts involved in the claims asserted herein include the following:

a)     BCIT records reflect that, between August 8, 2001, and November 6, 2001, there were only eight (8) share certificates, totaling only 795,518 shares, issued bearing the name Bancorp International Group and CUSIP Number 05968X106.  Of those 795,518 shares, only 645,806 were held by DTCC to cover public trades.  DTCC records clearly establish that, currently, DTCC actually needs to cover over 328,000,000 BCIT shares! Based on this scenario, it is clear that DTCC and FINRA have a sinister motive for never allowing the BCIT shares to trade again, as there are only 795,518 BCIT shares lawfully in existence, per the court's order in the Oklahoma Case. And if the BCIT shares were allowed to trade, there would only be 795,518 shares lawfully available and authorized to trade, yet DTCC would be obligated to deliver, on demand,  over 328,000,000 BCIT shares to shareholders who  DTCC's records reflect own over 328,000,000 BCIT shares, and there would be insufficient lawfully-issued BCIT shares to satisfy such demand from DTCC-record shareholders.  Upon information and belief, DTCC, FINRA and the other Defendants have agreed to prevent the BCIT shares from trading again, and this is an act of conspiracy.

b)     It is clear and unequivocal that BCIT had never issued the 328,000,000 BCIT shares that DTCC records reflect have been sold on the open market, and those 328,000,000 BCIT shares did not exist until after the order was issued by the court in the Oklahoma Case, on January 6, 2006.

c)      In order to comply with the court order in the Oklahoma Case, BCIT had to alter the share capital of BCIT by filing an Amendment to its Articles of Incorporation with the Secretary State of Nevada, thereby creating enough authorized shares in the company to be able to issue the certificates for such court-ordered shares. This Amendment to the capital structure of BCIT then necessarily required the above-described change in the CUSIP Number for all BCIT shares.

d)      The shares that were then issued in compliance with the court order in the Oklahoma  Case were issued on newly-printed BCIT certificates bearing BCIT's new and unique CUSIP Number 05968x205.  At that point, FINRA should have announced to all its members and to DTCC that the CUSIP Number for BCIT shares had changed, rendering all other share certificates with other CUSIP Numbers, null and void, for all purposes. FINRA, DTCC and CUSIP Global Services work very closely with each other, and the financial market place, regarding changes in CUSIP Numbers and related market/financial transactions.

e)      Brokers transacting trades of BCIT shares did not change the CUSIP Number on their respective client's account from CUSIP 106 to CUSIP 205 based on their bald assertion that DTCC would not change or fully activate the new CUSIP Number (CUSIP 205 ) on its system because FINRA would not allow DTCC to do so. A true "Three Stooges" scenario, created and engaged in by three of the most sophisticated, knowledgeable and powerful participants in the world financial market place.

f)      However, as Defendants, who are sophisticated participants in the financial industry and, in essence, control the market place, certainly from an administrative and regulatory standpoint, know only too well, FINRA does not issue and control CUSIP Numbers; Standard & Poor's issues and controls such numbers. So it is not up to FINRA to

MICHAEL J. MORRISON
Attorney and Counselor at Law
1495 Ridgeview Drive, Suite 220
Reno, NV 89509
(775) 827-6300 • Fax (775) 827-6311

decide whether or not to approve or accept the CUSIP Number, as FINRA has no legal authority to stop or otherwise interfere with the change of a CUSIP Number by Standard & Poor's. And DTCC knows or should know this to be the case. FINRA's conduct in this regard was in bad faith and in violation of contracts and legal duties owed by FINRA, including a duty owed to BCIT and its shareholders, as well as the financial market place. And DTCC participated in and furthered the conduct of FINRA. Such conduct interferes with the contract and other legal rights of BCIT and its shareholders, is an act of bad faith, represents a conspiracy among Defendants and constitutes other business torts engaged in by Defendants.

g)      In mid-2006, Legacy became the Market Maker for BCIT and submitted a Form 15c2-11 to FINRA. This form is required by FINRA to provide FINRA with information and due diligence. In this case, the 15c2-11 submitted to FINRA used the CUSIP 205 and that CUSIP 205 was accepted by and was eventually processed by FINRA as the new and unique CUSIP Number for BCIT shares.

h)      At about the same time, other brokerage firms, such as E-Trade, also started using and quoting the CUSIP 205 on clients' accounts.

i)      On October 26, 2006, BCIT issued a press release announcing that FINRA had approved the new 15c2-11, recognizing and giving full deference to the new CUSIP 205, which meant BCIT was able to recommence trading of its shares in the public markets.

j)      Accordingly, on November 7, 2006, BCIT shares started trading again in the public markets for 30 minutes, but trading was suddenly and inexplicably halted due to alleged "clerical errors" regarding the Company's CUSIP Numbers. BCIT's stock went unquoted/untraded for four (4) consecutive trading days and was deemed to be in violation of

SEC Rule 15c-2-11, and, therefore, got delisted from the OTCBB market.   BCIT and others have asked FINRA what the "clerical errors" were, but  FINRA has declined to respond or explain the devastating and destructive action taken by Defendants  against BCIT and its shares and shareholders. This was further bad faith conduct and acts in furtherance of a conspiracy to harm BCIT and its shares and shareholders.

k)      Since September of 2005, no reporting institution has ever come forward and submitted any unauthorized shares to the SEC, FBI or BCIT Transfer Agent.

l)      BCIT, in an effort to help guarantee the full elimination of any invalid/illegal/unauthorized securities, has offered for the past eight (8) years to exchange any unauthorized or fraudulent shares that were contrived from the original corporate identity fraud in 2005 for valid BCIT shares.

m)      In a final effort to resolve any remaining issues, in December 2012,  BCIT wrote to every institution shown to be holding a position in BCIT shares in an effort to solicit and encourage the surrender of any BCIT share certificates to the BCIT transfer agent for authentication.

n)      BCIT also issued a press release  giving all holders of BCIT securities notice that  December 31, 2012,  was the final dead line to exchange any invalid BCIT securities or such securities would  be forever cancelled and worthless.

o)      No shares have been surrendered and, for the record, not once since the SEC halt at the start of September of 2005 has anyone come forward to exchange shares.  To further exacerbate the situation created by Defendants, BCIT shares owned and held in paper form by BCIT shareholders have been surrendered to the respective BCIT shareholder's broker and the broker sent the BCIT share certificate(s) to the DTCC for "safe-keeping", and

MICHAEL J. MORRISON
Attorney and Counselor at Law
1495 Ridgeview Drive, Suite 220
Reno, NV 89509
(775) 827-6300 • Fax (775) 827-6311

now, when the lawful BCIT shareholder demands the certificate for BCIT shares, FINRA and

DTCC refuse to release or deliver such shares. This is another act in furtherance of a

conspiracy and constitutes conversion and other business and commercial torts.

p)     The Settlement Agreement in the Oklahoma Case resolved all issues of the

corporate identity theft and unauthorized shares.

q)     In October 2012, BCIT cancelled all eight (8) legitimate BCIT share

certificates issued with CUSIP 106 and ordered those certificates be exchanged for new

certificates with the correct and active CUSIP 205.

r)     Standard and Poor's asserts there can only be one CUSIP number for a stock

and that the sole and exclusive CUSIP Number for BCIT stock is 05968x205, yet TD

Ameritrade and apparently DTCC are knowingly and illegally using the former and now

inactive CUSIP 05968x106, and they claim the reason that they are doing so is because of

FINRA, and FINRA's alleged "requirements". There are no such "requirements" and

Defendants' assertion to the contrary is a ruse and constitutes misrepresentation, fraud and

bad faith. More bad faith conduct and activities in furtherance of a conspiracy by Defendants,

specifically FINRA, and others.

s)     BCIT and its attorney have written to FINRA asking the following questions,

but have not had a response:

a.     Did FINRA ever announce the CUSIP change in January 2006?

b.     If FINRA did not make such announcement, why and by what legal

authority did they refuse or fail to do so? Standard & Poor's has sole authority to

issue a CUSIP Number, and all parties in the financial industry and market place are

required to accept and recognize the CUSIP Numbers assigned and issued by

MICHAEL J. MORRISON
Attorney and Counselor at Law
1495 Ridgeview Drive, Suite 220
Reno, NV 89509
(775) 827-6300 • Fax (775) 827-6311

Standard & Poor's. Standard & Poor's regulates CUSIP Numbers, not FINRA.
FINRA's refusal to accept and use the CUSIP Number issued to BCIT shares by
Standard & Poor's is bad faith conduct and contravenes numerous laws, rules and
regulations, and is conduct violative of tort duties owed by FINRA and contractual
relationships of which Plaintiffs are parties and/or intended third-party beneficiaries.

        c.     Did FINRA receive notice of the new CUSIP Number for BCIT shares?
FINRA absolutely knew of the change of BCIT's CUSIP Number because of the
15c2-11 that was submitted by Legacy, and which FINRA accepted and approved.

        d.     What were the alleged "clerical errors" relating to the CUSIP
Number?

        e.     Why has FINRA failed and refused to make any announcement about
BCIT shares?

FINRA's failure and refusal to respond to these questions from BCIT is in bad faith and
tortious, furthers the conspiracy among Defendants and is manifestly intended to damage the
rights of BCIT, its shares and shareholders.

t)    As a direct and proximate result of the conduct of Defendants, and each of them,
Plaintiff BCIT has suffered injury, loss and damages, including:

    a) loss of investment opportunity by and/or from third parties;

    b) injury to its reputation;

    c) inability to obtain financing;

    d) Plaintiff CARON has, based upon the false and misleading information and
representations by Defendants relating to the status of the BCIT shares, been prevented by
Defendants from purchasing and/or selling his shares, or obtaining physical possession of

MICHAEL J. MORRISON
Attorney and Counselor at Law
1495 Ridgeview Drive, Suite 220
Reno, NV 89509
(775) 827-6300 • Fax (775) 827-6511

- 15 -

his shares, all at a financial loss to CARON.

40.  Upon information and belief, Defendants derived substantial business and financial benefits from, *inter alia*, their respective breaches of their duties and interference with and breaches of agreements, and conversion, and their conduct constitutes an agreement among Defendants to engage in the conduct set forth herein, and constitutes a conspiracy.

41.  Defendants, and each of them, have a duty to provide (a) a full independent accounting of their respective activities and operations, specifically including a forensic financial accounting of trades and activities in BCIT stock from January 1, 2004 through current date, and (b) any and all documents referring to or reflecting any and all transactions of whatsoever nature, whether directly or indirectly/through an agent or other intermediary, involving BCIT and/or its issued and outstanding shares, including, but not limited to shares of record at the DTCC and/or shares  bearing a CUSIP Number 05968X106 and shares bearing a CUSIP Number 05968x205. Notwithstanding numerous demands that they do so, Defendants, and each of them, have failed and refused to provide such information to Plaintiffs.

42.  Plaintiffs have been required to employ the services of an attorney to protect their respective  legal interests in all of the matters raised in this Complaint and are, therefore, entitled to an award of attorneys' fees, costs and expenses incurred herein.

### FIRST CLAIM FOR RELIEF

### (INJUNCTIVE RELIEF)

43.  Plaintiffs reallege and incorporate herein by reference the allegations set forth in paragraphs 1-42 above as though fully set forth herein.

44.  Plaintiffs are suffering irreparable harm as a result of the conduct of Defendants and

MICHAEL J. MORRISON
Attorney and Counselor at Law
1495 Ridgeview Drive, Suite 220
Reno, NV 89509
(775) 827-6300 • Fax (775) 827-6311

- 16 -

Plaintiffs have no adequate remedy at law to correct the conduct of Defendants interfering with BCIT, the BCIT shares and shareholders. Plaintiffs are entitled to a temporary and permanent injunction, pursuant to NRCP 65, enjoining Defendants and all persons and parties employed by them, or acting for or in concert with them, to (a) immediately cease and desist from their respective conduct of holding or placing a "global lock" on the BCIT shares and immediately remove such hold/"global lock" on the BCIT shares and allow free trading of the BCIT shares in the financial market place; (b) immediately comply with written directives issued by Plaintiff BCIT and the order issued by the court in the Oklahoma Case relating to the BCIT shares; and immediately allow BCIT shareholders to obtain delivery of their share certificates. Plaintiffs are entitled to, and respectfully request an expedited hearing for the injunctive relief sought herein.

WHEREFORE, Plaintiffs pray for judgment as more particularly hereinafter set forth.

### SECOND CLAIM FOR RELIEF
### (FRAUD)

45.  Plaintiffs reallege the allegations contained in Paragraphs 1-44 hereof as though fully set forth herein.

46.  The representations made, and the scheme engaged in by Defendants were false and misleading, and known to be false and misleading, or should have been known to be false and misleading, as and when made, and/or Defendants knew or recklessly ignored the false and misleading nature of their statements and representations. Defendants had specific motives for their conduct in that they stood to profit from their activities relating to the "global lock" of the BCIT shares and certificates and their failure and refusal to accept the new BCIT CUSIP Number lawfully issued by Standard & Poor's to BCIT. Defendants

MICHAEL J. MORRISON
Attorney and Counselor at Law
1495 Ridgeview Drive, Suite 220
Reno, NV 89509
(775) 827-6300 • Fax (775) 827-6311

falsely and fraudulently represented to the market place and investing public, including

Plaintiff CARON, that the BCIT CUSIP Number was different from the one issued to

BCIT, and Defendants knew or should have known, as financial industry professionals, that

their representations were false and fraudulent as and when made by them to Plaintiffs,

third parties and the financial market place. Such conduct was intentional, reckless and

constitutes fraud and Defendants acted with *scienter*.

47.  On numerous occasions, and as recently as December 23, 2012, Todd Lahr

had telephonic communications with FINRA, and specifically with Katie Andrews and

Terri Reicher, employees of FINRA, wherein FINRA represented that (a) it had no

knowledge of a change in BCIT's CUSIP Number being changed from CUSIP Number

05968X106 to CUSIP Number 05968x205, and (b) BCIT had its registration as a public

company revoked by the SEC. Said representations were material, false and misleading and

made to, *inter alia*, (a) induce BCIT management and its shareholders, including Plaintiff

CARON, and financial industry professionals and participants to refrain from negotiating

transactions involving BCIT shares, and further induced industry professionals to refuse to

list shares of BCIT for trading, all of which BCIT management and its shareholders, and

third parties did in justifiable reliance upon said material representations, and (b) render

Plaintiff CARON and other shareholders, including Todd Lahr, unable to transact their

respective shares of BCIT stock, which resulted in severe financial losses.

48.  As a direct and proximate result of said conduct, Plaintiffs have incurred general

damages in a sum in excess of $10,000.

49.  As a further direct and proximate result of said conduct, Plaintiffs have incurred

special damages in a sum which has not yet been fully determined. Plaintiff will seek leave

MICHAEL J. MORRISON
Attorney and Counselor at Law
1495 Ridgeview Drive, Suite 220
Reno, NV 89509
(775) 827-6300 • Fax (775) 827-6311

- 18 -

to amend this Complaint to conform to proof at the time of trial.

50.  The above-described conduct by Defendants, and each of them, was reckless, wanton and malicious and each Plaintiff is, thereby, entitled to an award of exemplary and punitive damages in a sum in excess of $10,000 from each Defendant.

WHEREFORE, Plaintiffs pray for judgment as more particularly hereinafter set forth.

### THIRD CLAIM FOR RELIEF
### (STATUTORY MISREPRESENTATION)

51.  Plaintiffs reallege the allegations contained in Paragraphs 1-50 hereof as though fully set forth herein.

52.  The representations made to Plaintiffs, BCIT shareholders and the financial market participants by Defendants contained statements which, at the time and in light of the circumstances under which they were made, were reckless, false and misleading and omitted to state material facts necessary in order to make the statements not misleading. Such false and misleading statements and omissions include, but were not limited to the following:

(a)     Defendants knew the correct CUSIP Number for the shares of BCIT stock, and had no legal basis for refusing to allow BCIT, or the BCIT shareholders to transact dealings with the BCIT shares, or representing that the case number was different from the one actually issued by Standard & Poor's. The only possible reason for such conduct was to create a situation whereby Defendants would not be required to cover their respective "short" positions/inability to deliver share certificates as ordered by the court in the

MICHAEL J. MORRISON
Attorney and Counselor at Law
1495 Ridgeview Drive, Suite 220
Reno, NV 89509
(775) 827-6300 • Fax (775) 827-6311

- 19 -

Oklahoma Case and as demanded by BCIT and its shareholders.

53. Said misrepresentations and omissions and other misleading disclosures made by Defendants, and each of them, were all reckless, false and made in violation of the Nevada Revised Statutes. The Defendants knew or, but for their recklessness, should have known that the representations made to Plaintiffs and others in the financial community were false and misleading.

54. Defendants, and each of them, acting as agents for each other, in a knowing and willful manner, aided and abetted each of the other Defendants in their respective violations of NRS by engaging in improper professional conduct through the issuance of false and misleading information and by encouraging and inducing third parties, including their co-Defendants, to place a "freeze" on Plaintiff BCIT, its shares and shareholders, and its business activities, all based upon such false and misleading information, and causing Plaintiff CARON to be unable to transact his shares of BCIT stock.

55. The conduct of Defendants, and each of them, constitutes a device, scheme or artifice to defraud Plaintiffs, or a transaction, practice or course of business which operated or would operate as a fraud or deceit upon Plaintiffs in violation of NRS.

56. Defendants, and each of them, directly and/or indirectly, made use of a variety of means or methods in connection with each of the acts and practices alleged herein.

57. Defendants, and each of them, engaged in the above-described conduct with the intent to deceive, manipulate or defraud, and engaged in said conduct with reckless disregard for the consequences of such conduct to Plaintiffs.

58. As a direct and proximate result of said conduct, Plaintiffs have incurred general damages in a sum in excess of $10,000.00.

MICHAEL J. MORRISON
Attorney and Counselor at Law
1455 Ridgeview Drive, Suite 220
Reno, NV 89509
(775) 827-6300 • Fax (775) 827-6311

- 20 -

59. As a further direct and proximate result of said conduct, Plaintiffs have incurred special damages in a sum which has not yet been fully determined. Plaintiffs will seek leave to amend this Complaint to conform to proof at the time of trial.

60. The above-described conduct by Defendants, and each of them, was reckless, wanton and malicious and each Plaintiff is, thereby, entitled to an award of exemplary and punitive damages in a sum in excess of $10,000 from each Defendant.

WHEREFORE, Plaintiffs pray for judgment as more particularly hereinafter set forth.

## FOURTH CLAIM FOR RELIEF

### (NEGLIGENCE)

61. Plaintiffs reallege the allegations contained in Paragraphs 1-60 hereof as though fully set forth herein.

62. The conduct of Defendants, and each of them, including breaches of fiduciary duties, constitutes negligence and such negligent conduct proximately caused damages to Plaintiffs.

63. As a direct and proximate result of said conduct, Plaintiffs have incurred general damages in a sum in excess of $10,000.

64. As a further direct and proximate result of said conduct, Plaintiffs have incurred special damages in a sum which has not yet been fully determined. Plaintiffs will seek leave to amend this Complaint to conform to proof at the time of trial.

65. The above-described conduct by Defendants, and each of them, was reckless, wanton and malicious and each Plaintiff is, thereby, entitled to an award of exemplary and punitive damages in a sum in excess of $10,000 from each Defendant.

WHEREFORE, Plaintiffs pray for judgment as more particularly hereinafter set forth.

MICHAEL J. MORRISON
Attorney and Counselor at Law
1495 Ridgeview Drive, Suite 220
Reno, NV 89509
(775) 827-6300 • Fax (775) 827-6311

- 21 -

## FIFTH CLAIM FOR RELIEF

### (COMMON LAW MISREPRESENTATION)

66.   Plaintiffs reallege the allegations contained in Paragraphs 1-65 hereof as though fully set forth herein.

67.   Defendants, and each of them, by their conduct, breached their common law duty to Plaintiffs by fraudulently concealing from Plaintiffs and failing to disclose all material facts regarding their activities regarding the BCIT stock, and by affirmatively making untrue statements about the applicable rules restricting Defendants, their business purposes and intentions of Defendants, all as previously alleged.

68.   Defendants engaged in said conduct with the intent to deceive, manipulate or defraud and with reckless disregard for the consequences of their conduct on Plaintiffs.

69.   As a direct and proximate result of said conduct, Plaintiffs have incurred general damages in a sum in excess of $10,000.

70.   As a further direct and proximate result of said conduct, Plaintiffs have incurred special damages in a sum which has not yet been fully determined. Plaintiffs will seek leave to amend this Complaint to conform to proof at the time of trial.

71.   The above-described conduct by Defendants, and each of them, was reckless, wanton and malicious and each Plaintiff is, thereby, entitled to an award of exemplary and punitive damages in a sum in excess of $10,000 from each Defendant.

WHEREFORE, Plaintiffs pray for judgment as more particularly hereinafter set forth.

MICHAEL J. MORRISON
Attorney and Counselor at Law
1495 Ridgeview Drive, Suite 220
Reno, NV 89509
(775) 827-6300 • Fax (775) 827-6311

## SIXTH CLAIM FOR RELIEF

## (BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING)

72.  Plaintiffs reallege the allegations contained in Paragraphs 1-71 hereof as though fully set forth herein.

73.  Defendants, and each of them, had a duty to exercise good faith and deal fairly with Plaintiffs.

74.  Defendants, and each of them, breached said duty of good faith and fair dealing by performing the acts alleged herein.

75.  As a direct and proximate result of said conduct, Plaintiffs have incurred general damages in a sum in excess of $10,000.

76.  As a further direct and proximate result of said conduct, Plaintiffs have incurred special damages in a sum which has not yet been fully determined. Plaintiffs will seek leave to amend this Complaint to conform to proof at the time of trial.

77.  The above-described conduct by Defendants, and each of them, was reckless, wanton and malicious and each Plaintiff is, thereby, entitled to an award of exemplary and punitive damages in a sum in excess of $10,000 from each Defendant.

WHEREFORE, Plaintiffs pray for judgment as more particularly hereinafter set forth.

## SEVENTH CLAIM FOR RELIEF

## (CONVERSION)

78.  Plaintiffs reallege the allegations contained in Paragraphs 1-77 hereof as though fully set forth herein.

79.  The conduct of Defendants, and each of them, and others not yet known to Plaintiffs,

MICHAEL J. MORRISON
Attorney and Counselor at Law
1495 Ridgeview Drive, Suite 220
Reno, NV 89509
(775) 827-6300 • Fax (775) 827-6311

constitutes an unlawful conversion of valuable personal property belonging exclusively to Plaintiffs.

80.  As a direct and proximate result of said conduct, Plaintiffs have incurred general damages in a sum in excess of $10,000.

81.  As a further direct and proximate result of said conduct, Plaintiffs have incurred special damages in a sum which has not yet been fully determined. Plaintiffs will seek leave to amend this Complaint to conform to proof at the time of trial.

82.  The above-described conduct by Defendants, and each of them, was reckless, wanton and malicious and each Plaintiff is, thereby, entitled to an award of exemplary and punitive damages in a sum in excess of $10,000 from each Defendant.

WHEREFORE, Plaintiffs pray for judgment as more particularly hereinafter set forth.

### EIGHTH CLAIM FOR RELIEF
### (DECEPTIVE TRADE PRACTICE)

83.  Plaintiffs reallege the allegations contained in Paragraphs 1-82 hereof as though fully set forth herein.

84.  The conduct of Defendants, and each of them, and others not yet known to Plaintiffs, constitutes a deceptive trade practice, as defined in NRS Ch. 598.

85.  As a direct and proximate result of said conduct, Plaintiffs have incurred general damages in a sum in excess of $10,000.

86.  As a further direct and proximate result of said conduct, Plaintiffs have incurred special damages in a sum which has not yet been fully determined. Plaintiffs will seek leave to amend this Complaint to conform to proof at the time of trial.

87.  The above-described conduct by Defendants, and each of them, was reckless, wanton

MICHAEL J. MORRISON
Attorney and Counselor at Law
1495 Ridgeview Drive, Suite 220
Reno, NV 89509
(775) 827-6300 • Fax (775) 827-6311

and malicious and each Plaintiff is, thereby, entitled to an award of exemplary and punitive damages in a sum in excess of $10,000 from each Defendant.

WHEREFORE, Plaintiffs pray for judgment as more particularly hereinafter set forth.

## NINTH CLAIM FOR RELIEF

### (RACKETEERING)

88.   Plaintiffs reallege the allegations contained in Paragraphs 1-87 hereof as though fully set forth herein.

89.   The conduct of Defendants, and each of them, and others not yet known to Plaintiffs, constitutes "racketeering", as defined in NRS 207.350-520.  This "racketeering" has been effectuated and furthered by various means and methods, including all of the acts described above, and there are at least two predicate acts (fraud unrelated to securities transactions) sufficient for the Nevada state RICO claims.

90.   As a direct and proximate result of said conduct, Plaintiffs have incurred general damages in a sum in excess of $10,000.

91.   As a further direct and proximate result of said conduct, Plaintiffs have incurred special damages in a sum which has not yet been fully determined. Plaintiffs will seek leave to amend this Complaint to conform to proof at the time of trial.

92.   The above-described conduct by Defendants, and each of them, was reckless, wanton and malicious and each Plaintiff is, thereby, entitled to an award of exemplary and punitive damages in a sum in excess of $10,000 from each Defendant.

93.   Pursuant to NRS 207.470, Plaintiffs are entitled to recover from Defendants, and each of them, **treble the damages awarded**, plus attorney's fees and costs incurred in the investigation and litigation of this action.

MICHAEL J. MORRISON
Attorney and Counselor at Law
1495 Ridgeview Drive, Suite 220
Reno, NV 89509
(775) 827-6300 • Fax (775) 827-6311

WHEREFORE, Plaintiffs pray for judgment as more particularly hereinafter set forth.

## TENTH CLAIM FOR RELIEF

### (INTERFERENCE WITH CONTRACTS)

94.  Plaintiffs reallege the allegations contained in Paragraphs 1-93 hereof as though fully set forth herein.

95.  The conduct of Defendants, and each of them, and others not yet known to Plaintiffs, constitutes interference with each Plaintiff's respective contracts with third parties.

96.  As a direct and proximate result of said conduct, Plaintiffs have incurred general damages in a sum in excess of $10,000.

97.  As a further direct and proximate result of said conduct, Plaintiffs have incurred special damages in a sum which has not yet been fully determined. Plaintiffs will seek leave to amend this Complaint to conform to proof at the time of trial.

98.  The above-described conduct by Defendants, and each of them, was reckless, wanton and malicious and each Plaintiff is, thereby, entitled to an award of exemplary and punitive damages in a sum in excess of $10,000 from each Defendant.

WHEREFORE, Plaintiffs pray for judgment as more particularly hereinafter set forth.


## ELEVENTH CLAIM FOR RELIEF

### (INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGES)

99.  Plaintiffs reallege the allegations contained in Paragraphs 1-98 hereof as though fully set forth herein.

100. The conduct of Defendants, and each of them, and others not yet known to Plaintiffs,

MICHAEL J. MORRISON
Attorney and Counselor at Law
1495 Ridgeview Drive, Suite 220
Reno, NV 89509
(775) 827-6300 • fax (775) 827-6311

constitutes interference with each Plaintiff's respective prospective economic advantages.

101. As a direct and proximate result of said conduct, Plaintiffs have incurred general damages in a sum in excess of $10,000.

102. As a further direct and proximate result of said conduct, Plaintiffs have incurred special damages in a sum which has not yet been fully determined. Plaintiffs will seek leave to amend this Complaint to conform to proof at the time of trial.

103. The above-described conduct by Defendants, and each of them, was reckless, wanton and malicious and each Plaintiff is, thereby, entitled to an award of exemplary and punitive damages in a sum in excess of $10,000 from each Defendant.

WHEREFORE, Plaintiffs pray for judgment as more particularly hereinafter set forth

## TWELFTH CLAIM FOR RELIEF

### (DECLARATORY JUDGMENT)

104. Plaintiffs reallege the allegations contained in Paragraphs 1-103 above as though fully set forth herein.

105. Plaintiffs have a genuine dispute with Defendants, and each of them, regarding the rights and duties of the parties with regard to the BCIT shares and CUSIP Number, and such dispute is ripe for determination on an immediate basis.

106. Plaintiffs request the Court, pursuant to NRS Ch. 30, and on an expedited basis, before the conduct of the balance of the proceedings under the statutory trial rules and protocols, to hold a hearing to determine and declare the rights and duties among the parties, and seek a declaratory judgment, declaring as follows:

MICHAEL J. MORRISON
Attorney and Counselor at Law
1495 Ridgeview Drive, Suite 220
Reno, NV 89509
(775) 827-6300 • Fax (775) 827-6311

a.           Between August 8, 2001 and November 6, 2001,  there were eight (8) share certificates issued bearing the name Bancorp International Group, CUSIP Number 05968X106, totaling 795,518 shares, of which 645,806 were held by DTCC;

b.           On Friday January 6, 2006, the District Court of Oklahoma issued a court order to allow BCIT to issue new shares under Section 3(a)(10) of the 34 Act which would be exchanged for the  245,000,000 (approx.) unauthorized  shares, as identified by the SEC as being in the market place, in exchange for cash damages by the various parties, all as detailed in the settlement agreement in the Oklahoma Case;

c.           On January 6, 2006, BCIT filed an Amendment to its Articles of Incorporation with the Secretary of State of Nevada altering the capital structure of BCIT;

d.           On January 9, 2006, Standard and Poor's CUSIP Global Services issued a new CUSIP Number 05968X205 to BCIT and rendered the former CUSIP Number 05968X106 inactive. Standard & Poor's CUSIP Global Services confirms that the current active CUSIP Number for Bancorp International Group is 05968X205.

e.           Standard & Poor's confirms there can only be one active CUSIP Number for the subject shares of BCIT, and that, as of January 9, 2006, and currently, BCIT's sole and exclusive CUSIP Number is 05968x205;

f.           There is no evidence to suggest that there are any more unauthorized shares in the market place, and if there are, they should have been surrendered during the SEC halt in September 2005;

g.           BCIT has cancelled all the certificates issued on the compromised and invalid CUSIP Number 05968106, and any and all share certificates

MICHAEL J. MORRISON
Attorney and Counselor at Law
1495 Ridgeview Drive, Suite 220
Reno, NV 89509
(775) 827-6300 • Fax (775) 827-6311

bearing CUSIP Number 05968106 should be surrendered in compliance with the court order in the Oklahoma Case; and

        h.      Defendants must release any and all BCIT shares from any and all holds and/or locks, and allow free and unfettered transfer and delivery of any and all BCIT shares and certificates in the market place.

107.   The declaratory judgment should issue immediately and be directed to all Defendants, their agents and employees, and anyone acting through or in concert with Defendants, or any of them.

WHEREFORE, Plaintiffs pray for judgment as more particularly hereinafter set forth.

### THIRTEENTH CLAIM FOR RELIEF

### (CONSPIRACY)

108. Plaintiffs reallege the allegations contained in Paragraphs 1-107 hereof as though fully set forth herein.

109. The conduct of Defendants, and each of them, and others not yet known to Plaintiffs, constitutes an agreement to engage in the conduct described herein and in furtherance of such agreement, to engage in an unlawful conspiracy, employing, *inter alia*, means of fraudulent documents, misrepresentations and untrue statements to third parties, and to Plaintiffs, among other things.  This conspiracy has been effectuated and furthered by various means and methods, including all of the acts described above.

110. As a direct and proximate result of said conduct, Plaintiffs have incurred general damages in a sum in excess of $10,000.

111. As a further direct and proximate result of said conduct, Plaintiffs have incurred special damages in a sum which has not yet been fully determined. Plaintiffs will seek

MICHAEL J. MORRISON
Attorney and Counselor at Law
1495 Ridgeview Drive, Suite 220
Reno, NV 89509
(775) 827-6300 • Fax (775) 827-6311

leave to amend this Complaint to conform to proof at the time of trial.

112. The above-described conduct by Defendants, and each of them, was reckless, wanton and malicious and each Plaintiff is, thereby, entitled to an award of exemplary and punitive damages in a sum in excess of $10,000 from each Defendant.

WHEREFORE, Plaintiffs pray for judgment as more particularly hereinafter set forth.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs each pray for joint and several judgment against Defendants, and each of them, as follows:

1.    For judgment in favor of each Plaintiff and against Defendants, and each of them, jointly and severally, on all claims set forth herein.

2.    For general damages in a sum in excess of $10,000 from each Defendant.

3.    For special damages according to proof at the time of trial, including attorney's fees, costs and expenses.  Plaintiffs will seek leave to amend this Complaint to conform to proof at the time of trial.

4.    For punitive damages in a sum in excess of $10,000 from each Defendant.

5.    For a full independent financial accounting of the business operations of each Defendant relating to the BCIT shares, and an accounting of all transactions of whatsoever nature by each Defendant relating to the shares of BCIT.

6.    For a temporary and permanent injunction enjoining Defendants from continuing, and to immediately cease and desist from their abusive and tortious activities, as alleged hereinabove, and a mandatory injunction requiring Defendants to comply with the Oklahoma Court Order, dated January 6, 2006, and confirm that the only active and valid

MICHAEL J. MORRISON
Attorney and Counselor at Law
1495 Ridgeview Drive, Suite 220
Reno, NV 89509
(775) 827-6300 • Fax (775) 827-6311

- 30 -

CUSIP Number for BCIT shares is 05968X205, and order all Defendants to reflect and honor this CUSIP Number in all books and records maintained by or for each Defendant.

7.     For a declaratory judgment, declaring as follows:

      a.     Between August 8, 2001 and November 6, 2001 there were 8 share certificates issued bearing the name Bancorp International Group Inc. CUSIP 05968X106 totaling 795,518, of which 645,806 were held by DTCC;

      b.     On Friday January 6, 2006, the District Court of Oklahoma issued a court order to allow the company to issue new shares under Section 3(a)(10) of the Securities Exchange act of 1934 which would be exchanged for the 245,000,000 (approx.) unauthorized shares as identified by the SEC as being in the market place in exchange for cash damages by the various parties, detailed in the settlement agreement in the Oklahoma Case;

      c.     On January 6, 2006, the company filed an amendment to its Articles of Incorporation with the Secretary of State of Nevada altering the capital structure of the company;

      d.     On Monday January 9, 2006, Standard and Poor's Global CUSIP services issued a new CUSIP Number 05968X205 to the company and rendered the former CUSIP Number 05968X106 inactive. Standard & Poor's Global CUSIP services confirm that the current active CUSIP Number for Bancorp International Group Inc. is 05968X205.

      e.     Standard & Poor's confirm there can only be one active CUSIP Number for a corporation's securities and that, as of January 9, 2006, in the case of BCIT, the sole and exclusive CUSIP Number for BCIT shares is 05968x205;

      f.     There is no evidence to suggest that there are any more unauthorized

MICHAEL J. MORRISON
Attorney and Counselor at Law
1495 Ridgeview Drive, Suite 220
Reno, NV 89509
(775) 827-6300 • Fax (775) 827-6311

- 31 -

shares in the market place and, if there are, any and all such shares should have been surrendered during the SEC halt in September 2005;

       g.        BCIT has cancelled all the share certificates issued on the compromised and invalid CUSIP Number 05968106 and all of such share certificates should be surrendered in compliance with the order filed by the District court in the Oklahoma Case; and

       h.        Defendants must release any and all BCIT shares from any and all holds and/or locks, and allow free and unfettered transfer and delivery of any and all BCIT shares and certificates in the market place.

8.    For a jury trial on all issues raised herein.

9.    For such other and further relief as the Court deems just and proper, including attorney's fees, costs and expenses, plus interest on all sums and damages awarded hereunder at the highest legal rate until paid in full.

Dated this ___ day of March, 2013.

                              _____
                                Michael J. Morrison, Esq.,
                                Attorney for Plaintiffs

MICHAEL J. MORRISON
Lawyer and Counselor at Law
1495 Ridgeview Drive, Suite 220
Reno, NV 89509
(775) 827-6300 • Fax(775) 827-5411

<u>AFFIRMATION</u>

Pursuant to NRS 239B.030

The undersigned does hereby affirm that the preceding document does not contain the social security number of any person.

Dated this 7th day of March, 2013.

Michael J. Morrison, Esq.
Attorney for Plaintiff

FUNCTION = INQUIRE                                          CIVIL CASE 1

Case #: 13C-333

```
          ---- PLAINTIFF -----------------        ----- DEFENDANT 1 -----------------
NAME==> 1. BRIAN BLANKENSHIP                  7. T.D. AMERITRADE
ALPHA=>    BLANKENSHIP, BRIAN                    AMERITRADE, TD
ADDR==> 2. 882 OAKLAND DRIVE                  8. PO BOX 2209
CITY==> 3. PRINCETON           4. ST: WV      9. OMAHA                10. ST: NE
ZIP===> 5. 24740      6. PH: 304-425-9350    11. 068103220  12. PH: 800-669-3900


          ----- DEFENDANT 2 -----------------
NAME==>13.                                   21. DATE FILED:      02/08/13
ADDR==>14.                                   22. RE-ISSUE DATE:
CITY==>15.                      16. ST:      23. COUNTER/CROSS CLAIM?:
ZIP===>17. 00000     18. PH:                 24. MAGISTRATE ASSIGNED: RF
                                             25. NATURE OF ACTION:    OT
19. FINANCIAL AFFIDAVIT (Y/N):               26. PREJUDGMENT ATTACH:
20. AMOUNT FILED:   1,942.97                 27. STATUTORY BOND?:

<Ret>=Cont   9=Menu  C=Chg  7=Adv  5=FinInq  8=FinAdd  1,2,3=Scr  B=Back   =>
```

CASE #: 13C-333

```
--- SERVICE OF PROCESS ------------     ------- NOTES / COMMENTS --------------
                 DEF 1     DEF 2
1. SERVICE DATE: 02/25/13               6. RES.DEL. THRU SOS. DEF MOTION FOR
2. METHOD:       PS                        MORE DEF STATEMENT FILED 3-14-13
3. ANSWER DATE:  03/14/13                  PL RESPONSE TO DEF MOTION FILED
                                           4-1-13
4. AFF OF PREJUDICE:          BY:
5. AFF OF PREJUDICE:          BY:


      --- PLAINTIFF'S ATTORNEY ---------   --- DEFENDANT'S ATTORNEY ----------
NAME==> 7.                               13. MYCHAL SCHULZ
ADDR==> 8.                               14. P O BOX 11887
CITY==> 9.                    10. ST:    15. CHARLESTON            16. ST: WV
ZIP===>11. 00000      12. PH:            17. 25339     18. PH: 304-357-0900


<Ret>=Cont   9=Menu   C=Chg  7=Adv   5=FinInq  8=FinAdd  1,2,3=Scr  B=Back    =>
```

CASE #: 13C-333

```
------ TRIAL DATES --------------------      ------ JUDGMENT ----------------
 1. JURY REQUEST DATE:         BY:           10. FAVOR: PL    DECISION TYPE:
 2. PRETRIAL MOTIONS:          TIME:         11. JUDGMENT DATE:  04/15/13
 3. PRETRIAL CONF:  04/15/13 TIME: 02:15 P
 4. ORIGINAL TRIAL:            TIME:         12. JUDGMENT AMT:
---- CONTINUANCES ---------------------
 5. BY:        TO:             TIME:         13. COURT COSTS:
 6. BY:        TO:             TIME:         14. POSSESSION OF PROPERTY?:
 7. BY:        TO:             TIME:         15. DISMISSAL DATE:
                                             16.        TYPE:
 8. TRIAL MAGISTRATE: RF                     17. COMPLAINT WITHDRAWN:
 9. REMOVED TO CIRCUIT COURT:                ---- POST JUDGMENT -------------
                                             19. SET ASIDE HEARING DATE:

---- JUDGMENT ORDER ---------------------    20. STATUS (G,D):
18. JUDG FOR PLAINTIFF.  170,000 SHARES OF   21. APPEAL DATE:
    BANCORP INTERNATIONAL GROUP INC (BCIT)    22. BOND AMT:
                                             23. WRIT TYPE:      24. PURGE:
<Ret>=Cont  9=Menu  C=Chg  7=Adv  5=FinInq  8=FinAdd  1,2,3=Scr  B=Back    =>
```