**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

| | | |
|---|---|---|
| **BRIAN BLANKENSHIP,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 1:13-8048** |
| | ) | |
| **T.D. AMERITRADE, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court is Defendant's "Motion to Dismiss, or in the Alternative, Motion to Refer to Arbitration" (Document No. 3.), filed on April 15, 2013. The Court notified Plaintiff pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendant's Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendant in moving to dismiss. (Document No. 4.) Plaintiff, however, failed to file a Response. Having considered the circumstances presented and applicable law, the undersigned finds, and respectfully recommends, that Defendant's Motion should be granted in part and denied in part. To the extent Defendant requests that Plaintiff's claims be dismiss and referred to arbitration, the undersigned recommends that Defendant's motion be granted. To the extent Defendant requests that Plaintiff's Complaint be dismissed for failure to state a claim, the undersigned recommends that Defendant's Motion be denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

On February 8, 2013, Plaintiff filed his Complaint in the Magistrate Court of Mercer County,

West Virginia.[1] (Document No. 1-2, pp. 2 - 3.) In his Complaint, Plaintiff alleged as follows:

> On 8-17, 8-24, and 8-25 of 2005, I purchased 170,000 shares of Bancorp International Group, Inc. (BCIT) through my broker T.D. Ameritrade. In total I paid $1,942.97. Since September 2011, I made several requests for my certificates and it was refused. I requested a refund as well, and they also refused as the defendant stated my trades were good and valid and that the shares were in my account. I have made further requests for my certificates and they have been refused. I want my certificates to be delivered to me.

(Id., p. 3.) On March 13, 2013, Defendant filed a Motion for More Definite Statement. (Id., pp. 4 - 7.) On March 22, 2013, Mercer County Magistrate Fowler scheduled a hearing on the Motion for April 15, 2013. (Document No. 7-1, p. 11.)

On April 1, 2013, Plaintiff filed his "Response to Defendant's Motion for a More Definite Statement. (Document No. 1-2, pp. 8 - 17.) In his Response, Plaintiff alleges that Defendant "has refused to deliver a share certificate representing my ownership of 170,000 shares in Bancorp International Group Inc. (BCIT) and I request the court compel the defendant to deliver this certificate in accordance with U.C.C. 8-508, UCC 2-401, SEC Rule 15c3-3, Nevada Revised Statute 78.235, and FINRA Rule 11870." (Id., p. 9.) Plaintiff states that in September 2011, he "requested [Defendant] to deliver a certificate representing the 100,000 of BCIT ["Bancorp International Group, Inc."] shares [Defendant] held in [Plaintiff's] account and [Defendant] refused as well as denying [him] a full refund for the remaining 3 trades." (Id.) Plaintiff contends that Defendant "said they were unable to deliver due to a 'global lock' on BCIT stock by the Depository Trust & Clearing Corporation [DTCC], which is not true." (Id.) First, Plaintiff states that Defendant violated Section 10b-10 of the Securities Exchange Act ["SEC"] because Defendant failed to respond to Plaintiff's

---

[1]  Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

requests that "defendant confirm the details of the seller of my shares." (Id., p. 10.) Plaintiff explains that "'the trade confirmation rule' requires broker-dealers to confirm the identity, quantity, and price of securities obtained on behalf of customers." (Id., p. 15.) Second, Plaintiff contends that Defendant violated U.C.C. § 8-508 because "how I hold my shares is my choice and the broker is obligated to change my shares into another available form when I request it." (Id., p. 13.) Third, Plaintiff argues that Defendant "is a Nevada registered company" and Defendant violated "Nevada Revised Statute 78.235" by failing to provide Plaintiff with a certificate "certifying the number of shares in the corporation owned by the stockholder." (Id.) Fourth, Plaintiff claims that  Defendant violated Section 15c3-3(1) of the SEC because Plaintiff has "an absolute right to certificate delivery." (Id., pp. 13 - 14.) Fifth, Plaintiff states that Defendant violated U.C.C. § 2-401 because "the seller must perform and deliver and their responsibilities to me are not done until physical delivery is complete." (Id., p. 15.) Finally, Plaintiff argues that Defendant violated U.C.C. § 8 and Section 15c3-3(b)(1) of the SEC because Defendant has the responsibility "to obtain possession or control of securities and their obligation to deliver a certificate are 'substantive obligations.'" (Id.) As relief, Plaintiff requests that the Court enter an order compelling the Defendant to (1) "comply with the Uniform Commercial Code, Federal Securities Act, and Nevada Revised Statute; and (2) "deliver a physical share certificate pursuant to Section 15c3-3 of the Securities Exchange Act of 1934 for 170,000 (One hundred seventy thousand) Bancorp International Inc. shares in the name of Brian Blankenship." (Id., p. 17.)

By letter faxed on April 15, 2013, defense counsel notified Mercer County Magistrate Court that a hearing on the Motion for More Definite Statement was unnecessary as counsel planned to filed a Notice of Removal "by the close of business today." (Id., pp. 24 - 25.) By Judgment Order

entered on April 15, 2013,  Magistrate Fowler entered Judgment in favor of Plaintiff awarding him 170,000 shares of Bancrop International Group, Inc. (<u>Id.</u>, p. 27.) On April 15, 2013, subsequent to the entry of Judgment, Defendant filed its Notice of Removal and "Motion to Dismiss, or in the Alternative, Motion to Refer to Arbitration" with this Court. (Document Nos. 1 and 3.)

In its "Motion to Dismiss, or in the Alternative, Motion to Refer to Arbitration," (Document No. 3.), Defendant first argues that Plaintiff's Complaint should be dismissed because "neither Section 15(c)(3) of the Securities Exchange Act nor SEC Rule 15c3-3 provides Mr. Blankenship with a private right of action." (<u>Id.</u>, pp. 3 - 6.) Defendant, therefore, states that Plaintiff "has failed to state a claim for which relief can be granted. (<u>Id.</u>) Second, Defendant argues that "[i]n the event the Court does not dismiss Mr. Blankenship's claims, it should compel Mr. Blankenship to submit his claims against TDA to arbitration because he expressly agreed to do so in the agreement he entered into with TDA when he opened his account." (<u>Id.</u>, pp. 6 - 15.) As Exhibits, Defendant attaches the following: (1) A copy of "Plaintiff's Response to Defendant's Motion for a More Definite Statement" (Document No. 3-1.); (2) A copy of the Civil Summons and Complaint as filed in the Circuit Court for Mercer County, West Virginia (Document No. 3-2, pp. 1 - 3.); (3) A copy of the "Terms and Conditions" as entered into by Plaintiff and Defendant (<u>Id.</u>, pp. 4 - 14.); and (4) A copy of the "Cash & Margin Agreement" as entered into by Plaintiff and Defendant (<u>Id.</u>, pp. 16 - 18.). Notice pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on April 23, 2013, advising him of the right to file a response to the Defendant's "Motion to Dismiss, or in the Alternative, Motion to Refer to Arbitration." (Document No. 4.)

On April 26, 2013, Defendant filed its "Motion for Relief from Judgment." (Document No. 7.) Specifically, Defendant requested "relief from the Magistrate Court of Mercer County's Final

4

Judgment Order, which was entered on April 15, 2013, the same day this matter was removed to Federal Court." (Id.) On May 16, 2013, Plaintiff filed his Response to Defendant's "Motion for Relief from Judgment." (Document No. 8.) Defendant filed its Reply on May 23, 2013. (Document No. 9.) By Proposed Findings and Recommendation entered on May 31, 2013, the undersigned recommended that the District Court grant Defendant's "Motion for Relief from Judgment" and refer the matter back to the undersigned for further proceedings. (Document No. 10.) Plaintiff filed his Objections on June 7, 2013. (Document No. 11.) By Memorandum Opinion and Order entered on November 5, 2013, United States District Judge David A. Faber adopted the undersigned's recommendation, granted Defendant's "Motion for Relief from Judgment," and referred the matter back to the undersigned for further proceedings. (Document No. 12.)

## DISCUSSION

Defendant argues that Plaintiff's Complaint should be dismissed because there is no private right of action under Section 15(c)(3) of the SEA or SEC Rule 15c3-3. (Document No. 3.) In the alternative, Defendant contends that Plaintiff should be compelled to submit his claims to arbitration. (Id.) A review of Plaintiff's Response for a More Definite Statement reveals that Plaintiff asserts violations of the U.C.C. § 8-508, U.C.C. § 2-401, Sections 10b-10 and 15c3-3(1) of the SEA, SEC Rule 15c3-3, and Nevada Revised Statute 78.235. (Document No. 1-2.) Accordingly, the undersigned finds that it is appropriate to consider whether arbitration should be compelled.

The Federal Arbitration Act ["FAA"] provides a follows:

A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

5

9 U.S.C. § 2. Generally, "[t]he FAA reflects 'a liberal federal policy favoring arbitration agreements.'" Adkins v. Labor Ready, Inc., 303 F.3d 496, 500 (4th Cir. 2002)(quoting Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Although federal law governs the arbitrability of disputes, ordinary state-law principles resolve issues regarding the formation of contracts. Hill v. PeopleSoft, USA, Inc., 412 F.3d 540, 543 (4th Cir. 2005)(citation omitted); also see AT&T Mobility, LLC v. Concepcion, ___ U.S. ___, 131 S.Ct. 1740, 1742, 179 L.Ed.2d 742 (2011)("courts must put arbitration agreements on equal footing with other contracts and enforce them according to their terms"); Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 1656, 134 L.Ed. 902 (1996)("generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2.") A party may compel arbitration by establishing the following: "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provisions which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." Adkins, 303 F.3d at 500-01 (4th Cir. 2002)(quoting Whiteside, v. Teltech Corp., 940 F.2d 99, 102 (4th Cir. 1991).

First, the undersigned finds that a dispute clearly exists between the parties. Plaintiff filed the above action alleging that Defendant had improperly refused to "deliver a share certificate representing [his] ownership of 170,000 shares in BCIT." Defendant contends that it does not have the power or obligation to deliver the share certificates because "a global lock was placed on the shares that prevent such certification." Accordingly, the undersigned finds that a dispute exists between the parties. See Canyon Sudar Partners, LLC v. Cole ex rel. Haynie, 2011 WL 1233320,

6

*11 (S.D.W.Va. March 29, 2011)(filing a civil action is sufficient evidence of a dispute).

Second, the Court will consider whether a written agreement exists that includes an arbitration provision that purports to cover the dispute. Defendant argues that an enforceable agreement to arbitrate exists and the arbitration agreement covers the entirety of the claims alleged by Plaintiff. (Document No. 3.) The undersigned notes that Plaintiff failed to file a Response objecting to Defendant's Motion to Refer to Arbitration. Plaintiff, however, addressed the arbitration agreement in his "Response for More Definite Statement." In his "Response for More Definite Statement," Plaintiff acknowledges that "[t]here is a binding arbitration clause in my brokerage agreement under which both parties agree to take disputes to FINRA Arbitration and under Section 2 of the Federal Arbitration Act, 9 USC." (Document No. 1-2, p. 16.) Plaintiff, however, contends that the instant case "is not suitable to be referred to FINRA as they must be disqualified due to a conflict of interest." (Id.) Plaintiff explains that "FINRA is being sued by Bancrop International Group, Inc. (BCIT) and its shareholder in Nevada for fraud relating to BCIT, which did harm to BCIT, its stock, and the shareholders."(Id.) Plaintiff, therefore, argues that "[t]hese circumstances are sufficient under Section 2 of the Federal Arbitration Act, 9 USC, to challenge the validity of the arbitration agreement and render it null and void." (Id.)

A court must engage "in a limited review to ensure that the dispute is arbitrable – i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." Glass v. Kidder Peabody & Co., Inc., 114 F.3d 446, 453 (4th Cir. 1997). Arbitration agreements must be construed with "due regard . . . to the federal policy favoring arbitration, and ambiguities . . . [must be] resolved in favor of arbitration." Cara's Notions, Inc. v. Hallmark Cards, Inc., 140 F.3d 566, 569 (4th Cir. 1998)(citation omitted). The burden is on

Defendant to demonstrate that a valid contract exists under West Virginia law. Under West Virginia law, "[t]he fundamentals of a legal 'contract' are competent parties, legal subject-matter, valuable consideration, and mutual assent."  Syl. Pt. 5, <u>Virginian Export Coal Co. v. Rowland Land Co.</u>, 100 W. Va. 559, 131 S.E. 253, 262 (1926).

A review of the record reveals that an Arbitration Agreement is contained in the Brokerage Account Agreement signed by Plaintiff on October 31, 2003. (Document No. 3-2, pp. 4 - 18.) Specifically, the Brokerage Account Agreement provides as follows: "I understand that this Brokerage Account Agreement contains pre-dispute arbitration clauses in the Terms and Conditions."  (<u>Id.</u>, pp. 16 - 17.) The Terms and Conditions provides, in pertinent part, as follows:

**Arbitration Disclosure and Agreement**

99. The following arbitration provision will apply to any controversy or claim that arises between me and Ameritrade:

a) Arbitration is final and binding on the parities;

b) The parties are waiving their right to seek remedies in court, including the right to jury trial;

c) Pre-arbitration discovery is generally more limited than, and different from court proceedings;

d) The arbitrators' award is not required to include factual findings or legal reasoning, and any parties right to appeal or seeks modification of rulings by the arbitrators is strictly limited;

e) The panel of arbitrators will typically including a minority of arbitrators who were or are affiliated with the securities industry;

f) No person shall bring a putative or certified class action to arbitration nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied, or (ii) the class is decertified, or (iii) the client is excluded from the

class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this Agreement except to the extent stated herein.

100. All controversies concerning (a) any transaction, (b) the construction, performance or breach of this or any other agreement, whether entered into prior to, on or after the date of this Agreement, or (c) any other matter which may arise between Ameritrade and me shall be determined by arbitration in accordance with the rules of the National Association of Securities Dealers, Inc.

(Id., p. 11.) Plaintiff does not dispute the validity of the above agreement. Plaintiff merely claims that he should not be required to arbitrate because the arbitrators may have a conflict of interest. The possibility that an arbitrator may have a conflict of interest is insufficient to invalidate the agreement to arbitrate. The NASD Code of Arbitration Procedure sets forth specific procedures addressing the appointment and disqualification arbitrators.[2] Thus, the undersigned finds that a valid agreement to arbitrate exists. The Court further finds that Plaintiff's claims fall within the scope of the arbitration agreement. Plaintiff contends that Defendant violated its obligations under the Brokerage Account Agreement, which clearly falls within the scope of the arbitration agreement. Accordingly, the Court finds that a written arbitration agreement exists between the parties and Plaintiff's claims fall within the scope of the arbitration agreement.

Third, the Court must consider whether the transaction in question relates to interstate commerce. As state above, the transaction in dispute involves Plaintiff's purchase of shares of BCIT stock through Defendant. Plaintiff is a citizen of West Virginia. BCIT is a Nevada registered company and Defendant is a registered Nebraska corporation. Accordingly, the undersigned finds that the transaction in question relates to interstate commerce. See Canyon Sudar Partners, LLC,

---

[2] The Arbitration Agreement states that all controversies "shall be determined by arbitration in accordance with the rules of the National Association of Securities Dealers, Inc." (Document No. 3-2, p. 11.)

2011 WL 1233320, *10(finding that the claim of interstate commerce was met by Defendant's purchasing of supplies and equipment from out-of-state vendors).

Fourth, the undersigned will consider whether there has been a failure to arbitrate the dispute. The record reveals that instead of submitting his claims for arbitration, Plaintiff filed a Complaint asserting his claims in the Mercer County Magistrate Court. In his "Response for More Definite Statement," Plaintiff states that he filed suit even though "[t]here is a binding arbitration clause in my brokerage agreement under which both parties agree to take disputes to FINRA Arbitration and under Section 2 of the Federal Arbitrat Act, 9 USC." (Document No. 1-2, p. 16.) Thus, Plaintiff clearly filed his Complaint without taking steps to arbitrate his claims. Based upon the foregoing, the undersigned finds that arbitration should be compelled in the instant case because all four factors to compel arbitration have been met.

Finally, the undersigned will consider whether dismissal, rather than a stay, is warranted. Section 3 provides that a Court "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . .." 9 U.S.C. § 3. Although the above provision is mandatory by its terms, this Court has recognized that "[t]he available relief . . . is not limited strictly to a stay of the proceedings." Van Lehn v. MedaStat USA, LLC., 2005 WL 1845269, * 2 (S.D.W.Va. Aug. 1, 2005)(J. Goodwin). "Section 3 of the FAA 'was not intended to limit dismissal of a case in proper circumstances.'" Id. (citing, Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992). Specifically, "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." Id. (citing, Choice Hotel International, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707,

709-10 (4th Cir. 2001). A review of the record reveals that all issues raised in Plaintiff's Complaint are subject to the arbitration agreement. Accordingly, the undersigned recommends that Defendant's Motion to Dismiss and Refer to Arbitration be granted and Defendant's Motion to Dismiss for failure to state a claim be denied.

**PROPOSAL AND RECOMMENDATION**

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **GRANT in part and DENY in part** Defendant's "Motion to Dismiss, or in the Alternative, Motion to Refer to Arbitration" (Document No. 3.). Specifically, the undersigned recommends that Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) be **DENIED** and Defendant's Motion to Dismiss and Refer to Arbitration be **GRANTED**.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985);

<u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Faber and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: January 28, 2014.

R. Clarke VanDervort
United States Magistrate Judge